UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA –
SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

**FILED**

**MAR 16 2023**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>Plaintiff,<br><br>V.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | CIVIL CASE NO: 3:23-cv-00048-WHO<br><br>**JURY TRIAL DEMANDED**<br><br>**(Direct Patent Infringement), (Induced and Contributory Patent Infringement), (Joint Patent Infringement)**<br><br>March 15, 2023 |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT**

This case, not Plaintiff's previous CFC Case *Golden v. US* No. 13-307C, is re-filed in this Court because it was affirmed and dismissed *without prejudice* at the Federal Circuit in *Golden v. Apple, Inc. et al* [Samsung Electronics America, Inc.] CAFC Case 22-1229, for "not pleading enough factual allegations for relief that is plausible on its face". This case has never been litigated before on the merits. *Golden v. US* Case No. 13-307C, was a case against the Government. Samsung's only defense is falsely pleading this case has already been adjudicated.

## The CLAIMS COURT DOES NOT HAVE JURISDICTION TO ADJUDICATE THIRD-PARTY CONTRACTORS [SAMSUNG] WHO PERFORMS WORK FOR THE GOVERNMENT UNDER COOPERATIVE AGREEMENTS

According to the Department of Homeland Security (DHS), Samsung entered into a *cooperative agreement* with the DHS to make, use, offer for sell, and sell cell phone capable of CBRNE detection in accordance with the specifications published in the DHS S&T BAA07-10 *CELL-ALL UBIQUITOUS BIOLOGICAL & CHEMICAL SENSING* initiative.

Upon information and belief Samsung entered into the *cooperative agreement* to avoid any infringement liability. The DHS entered into the *cooperative agreement* because according to *Zoltek III*, as long as Samsung made at least one process of the alleged infringing product abroad, the Government cannot be held responsible for infringement.

Between the years 2008-2012, Samsung continued to make, use, offer for sell, and sell cell phones (i.e., smartphones) capable of CBRNE detection in accordance with the specifications published in the DHS S&T BAA07-10 *CELL-ALL* initiative while under a *cooperative agreement* with the Government. The DHS lost its protection from infringement liability in 2012 when the Federal Circuit in *Zoltek V* overturned *Zoltek III* and stated it doesn't matter that a process of the alleged infringing product is made abroad, as long as the process is identified as an element of the alleged infringing product.

On October 21, 2013, the Court of Federal Claims *Golden v. USA* Case No. 13-307C "granted defendant's motion for a more definite statement and directed plaintiff to file such, which he did a month later. … It continued to assert infringement of the 990 patent by DHS and NASA and a host of third-party electronics manufacturers, such as LG, Apple, and Qualcomm, whom he alleged had "*cooperative agreements*" with DHS."

On February 7, 2014, the Court of Federal Claims *Golden v. USA* Case No. 13-307C … "through solicitation number "BAA07-10," entitled "CELL-ALL Ubiquitous Biological and Chemical Sensing," which was released on October 2007. Third Am. Compl. ¶¶ 28 (ECF No. 29). Plaintiff claimed infringement by third parties: "Seacoast Science Inc., Center for Nanotechnology at NASA's Ames Research Center, and Rhevision Technology Inc., Samsung Electronics Co. Ltd, LG Electronics Inc., Apple Computer Inc., and Qualcomm Inc.," but asserted that all the third parties had entered into *cooperative agreements* from the [DHS] for providing hardware, providing software, and providing wireless service

In the Court of Federal Claims *Golden v. USA* Case No. 13-307C Dkt. 130 Filed on March 29, 2018, the CFC determined: "*[t]he court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate patent infringement allegations concerning [] cooperative agreements, because any benefit to the Government, at best, would be incidental*." 10/20/17 Gov't Mot. at 10-16. In addition, none of the [] *cooperative agreements* evidence any "express or implied authorization and consent by the [G]overnment.": The CFC dismissed 61 infringement claims.

"Judge Braden dismissed for lack of jurisdiction allegations concerning … *Cooperative Agreements*… because no use by the government of plaintiff's inventions was alleged. *Golden v. United States*, 137 Fed. Cl. 155 (2018). Next the court dismissed plaintiff's allegations concerning the government's alleged use of "Smartphones and Other Consumer Devices" made by LG, Apple, and Samsung under RCFC 12(b)(1) and 12(b)(6)." Dkt. 215

Plaintiff can't begin to explain why the DOJ and Claims Court continued for over 3 years to have Plaintiff defend against third-party contractors for whom the Claims Court had already determined "*[t]he court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate*

*patent infringement allegations concerning [] cooperative agreements, because any benefit to the Government, at best, would be incidental.*"

What is certain, the Claims Court, according to its own findings and ruling, does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate a claim against the Government where Samsung is contracted under a *cooperative agreement*.

## DEFENDANTS' MOTIN TO DISMISS BASED ON "ISSUE PRECLUSION" FAILS UNDER FED. R. EVID. 403.

As indicated above in the previous two sections, Samsung's evidence submitted to support its claim that an infringement claim against Samsung has already been litigated and decided, is without merit for lack of subject matter jurisdiction and fails under Fed. R. Evid. 403.

Subject-matter jurisdiction is the requirement that a given court have power to hear the specific kind of claim that is brought to that court. The Federal Circuit has held that § 1498(a) has two important features: "[i]t relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States." In *Crater Corp. v. Lucent Technologies, Inc.*, No. 00-1125 (Fed. Cir. June 6, 2001), the Federal Circuit so held because pursuant to 28 U.S.C. § 1498(a), a private party cannot be held liable for patent infringement for any goods "used or manufactured by or for the United States." The Federal Circuit concluded that a dismissal of a lawsuit against a private party pursuant to § 1498(a) is a dismissal because the claims court lacked subject-matter jurisdiction over the patent infringement claim…" [against a private party].

This Court well understands that Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." *See, e.g., Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015).

In particular, the Ninth Circuit and this Court have repeatedly recognized that "Rule 403 is concerned with unfairly prejudicial evidence," that is, evidence that "has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented." *United States v. Shields*, 2016 U.S. App. LEXIS, at *4 (9th Cir. Dec. 21, 2016) (quoting *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991)); *see also United States v. Henrikson*, 2015 U.S. Dist. LEXIS 170829, *9- 11 (E.D. Wash. Dec. 22, 2015) (citing *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013)) ("Unfair prejudice is the undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.").

Thus, the Ninth Circuit has emphasized that Rule 403 requires that evidence be excluded as irrelevant where it has "scant or cumulative probative force, [which is] dragged in by the heels for the sake of its prejudicial effect." *United States v. Plascencia-Orozco*, 852 F.3d 910, 926 (9th Cir. 2017); *see also Wetmore v. Gardner*, 735 F. Supp. 974, 983 (E.D. Wash. 1990) (citing *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)) (same).

Specifically, Samsung's evidence in this current should be excluded because "there is a significant danger that the jury [or judge] might base its decision on emotion or when non-party events would distract reasonable jurors [judges] from the real issues in a case." *United States v. Whittemore*, 2013 U.S. Dist. LEXIS 67636, at *7 (D. Nev. May 10, 2013) (citing *Tennison v. Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001), and *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)).

## MODIFICATION

The Defendant is again lying when they declare the only way the Samsung alleged infringing devices infringes Plaintiff's patents is by modification. One example that this is not true is Plaintiff's patented central Processing Units (CPUs).

The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs). To operate, the CPU "reads" input data from connected field devices through the use of its input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in the functioning of your devices. All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as smartphones, tablets, and navigational devices.

Plaintiff has claimed the Central Processing Unit (CPU) is the programmable device capable of general-purpose computation. It is the engine of logic, as with the brain, and the core piece of hardware in the Patent Owner's CMDC device (i.e., communication devices, monitoring device; monitoring equipment). The Patent Owner's CPU is capable of arithmetic operations such as add and divide and flow control operations such as conditionals. The Patent Owner's

central processing unit (CPU) is the electronic circuitry within the CMDC device that is vital and essential processes and executes program instructions.

Simply put, Plaintiff can modify the Samsung smartphone and add a CBRNE sensor that attaches through the port of the Samsung smartphone. Without Plaintiff's patented CPUs the sensor lacks the ability to carry out functional and operation instructions. The same applies if the sensor has to be synced through Bluetooth or even software; if the sensor is wired or wireless; if the sensor is configured to operate with a smartwatch; or if the sensor functions as a tag or a near-field communication (NFC) device.

The modification alone does not satisfy the infringement breakdown because in order for the sensor to receive operational and functional instructions, it must be interconnected to the Central Processing Unit(s). The "brains" of the Samsung smartphone.

Another example of the Samsung smartphones not needing to be modified to detect for CBRN substances is the *Megapixel* cameras of the smartphones that's included as standard hardware. The megapixel camera lens in the smartphone with microfluidic lens functions as a camera, but uses a microscope to focus. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots [] simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https:// www.understanding nano.com/cell-phone-sensors-toxins.html

GammaPix[TM] is a smartphone application available for both Android and iPhone operating systems that uses the smartphone camera sensor to detect and measure ionizing radiation fields. The software analyzes digital images produced by a smartphone camera to

determine the local gamma-ray radiation environment. It compares a dark image (i.e., with the camera covered) to one with bright pixels caused by photons from a radiation source, which pass through a covered camera lens. Recently, a Rapid Response Test (RRT) was conducted at Brookhaven National Laboratory to test the effectiveness and accuracy of GammaPix™ in detecting radioactive materials on a range of smartphones. A series of experiments were carried out to evaluate the detection capability, measurement capability, and low and high detection limits of GammaPix™ and establish the working suitability of GammaPix™. *Test GammaPix™ Radiation Detection Software with Smartphones* https://www.osti.gov/servlets/purl/1633327



Hyperspectral imaging scans for light frequencies that humans can't see in order to identify the unique chemical signatures of different substances. They say their device, which can be mass produced, is compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of

## SUMMARY JUDGEMENT

This case is "ripe" for summary judgement because throughout Plaintiff's pleadings in this case Plaintiff has provided element-by-element claim charts of the alleged infringement of Samsung products. Plaintiff has also provided the Court with an element-by-element claim chart that was presented in *Larry Golden v. Google LLC;* CAFC Case No. 22-1267 "***it is simply the language of the independent claims being mapped to … [i]t attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner … Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.***"

> "We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process. Our decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

This Court understands that precedents from cases which have been decided in lower courts can be overturned by judges in higher or 'superior' courts, but cases decided in higher courts are considered 'binding authorities', that is, decisions that must be followed.

Although the decision in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267 does not have to be 'binding authority' in this current case against Samsung, strong consideration should be given to the fact that the Samsung Galaxy S21 Smartphone "mirrors" the Google Pixel 5 Smartphone used in the claim charts submitted to the Federal Circuit in *Larry Golden v. Google LLC; CAFC Case No. 22-1267*. See the following chart comparison:

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone |
|---|---|
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G. OS: Android 11, upgradable to Android 13 | CPU: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) - USA/China. System-on-a-chip: Qualcomm SM8350 Snapdragon 888 5G (5 nm) - USA/China. OS: Android 11, upgradable to Android 13 |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. |
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.2 inches flexible OLED display at 421 ppi |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM |

| | |
|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | The Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Samsung Smart Doorlock - Apps on Google Play. Google Nest ×Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. |
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB A power adapter, use a USB-C to USB-A cable. | Samsung USB-C Cable lets you charge your USB-C device as well as sync your data to your smartphone |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |

| | |
|---|---|
| Connectivity:  Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Samsung Smart Doorlock - Apps on Google Play. Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Samsung Smart Doorlock - Apps on Google Play. Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |

## CONCLUSION

Therefore, if Samsung wants to avoid infringing Plaintiff's patents, Samsung must do the following: 1) discontinue using CPUs for smartphones that allegedly infringes Plaintiff's patented CPUs; 2) discontinue using the Google Android Open-Source Architecture with their mobile devices; 3) block all software applications that are specific to integrating CBRNE sensors with their mobile devices; 4) design their mobile devices to not include a port for CBRNE plug-ins; 5) design their mobile devices to not include cameras for CBRNE detecting; 6) design their mobile devices to not include the nine standard sensors that can be used as biosensors; or 7) settle previous damages with Plaintiff and negotiate a licensing agreement.

**Pursuant to FRCP Rule 56**

Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to challenge Plaintiff's alleged infringement claims; no genuine dispute that Plaintiff owns the patent rights for the smartphone; and, no genuine dispute to the validity of Plaintiff's patents. This case is ripe for summary judgement, and Plaintiff is entitled to judgment as a matter of law.

Sincerely,

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(M) 8649927104
Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgement", was served upon the following Defendant by priority "express" mail:

Brian G. Bieluch
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
E-mail: bbieluch@cov.com

*Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605