## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

|  |  |
|---|---|
| LARRY GOLDEN,<br><br>              Plaintiff,<br><br>              V.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>              Defendants. | CIVIL CASE NO: 3:23-cv-00048-WHO<br><br>**JURY TRIAL DEMANDED**<br><br>**(Direct Patent Infringement), (Induced and Contributory Patent Infringement), (Joint Patent Infringement)**<br><br>March 29, 2023 |

## PLAINTIFF'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). Both Samsung and Qualcomm have already recently been found guilty of infringement for "using" patented inventions i.e., smartphones, tablet, chips without authorization, consent, or legal right to do so.

All Plaintiff's cases concern motions to dismiss. Such motions do not resolve whether Plaintiff will ultimately prevail, but simply whether the complaint was sufficient to cross the

Court's pleading threshold. In *Intel Corp. v. Future Link Sys*. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ*., 69 F.3d 669, 673 (2d Cir. 1995) (citing *Scheuer*, supra, 416 U.S. at 236).

A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 117 (1994). The review of such a motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical—these are all words that can be used to describe a frivolous lawsuit.

Plaintiff is introducing *Kaist IP US LLC, v. Samsung Electronics Co., LTD., et al.*; Civil Action No. 2:16-CV-01314-JRG as supplemental authority to the relevant issues, the causes of actions, and the infringement "use" of Plaintiff's patented inventions that has already been decided by a jury. Samsung was found guilty of the allegations brought against them. In view of *Kaist IP US LLC, v. Samsung Electronics Co., LTD., et al,* Plaintiff should be granted summary judgement in his favor:

> "KAIST IP filed the new patent infringement suit [] claiming Samsung
> Electronics has additionally violated its patent in new products production including

smartphones. In its written accusation, KAIST IP reportedly claimed the defendants have not stopped infringing on the university's patent despite last year's court ruling, saying they have continued to develop and commercialize new products by utilizing the FinFet technology. KAIST IP claimed those products included smartphones such as Samsung Galaxy S8, Galaxy S9, Galaxy Note 8 and Galaxy Note 9 as well as the next generation modem chip Exynos Modem 5100 and infotainment system supporting drivers." *KAIST sues Samsung, Qualcomm for patent infringement.* https://www.koreatimes.co.kr/www/tech/2019/03/133_265114.html

"Samsung argues that Mr. Weinstein failed to tie his damages analysis to the smallest salable unit. Samsung says he applied his regression analysis to end-user smartphones and tablets and then apportioned down from there to stand alone chips. (Dkt. No. 577 at 15–16.) … [H]owever, Mr. Weinstein then summarily opines that this value should be "apportioned" down to the chip level for stand-alone "SoCs not sold in phones." (Id. at 188:15–18.) … [W]ithout any explanation, the jury had no substantial evidence from which to conclude that the royalty rate for the smartphones and tablets properly captured the incremental value of the Asserted Patent, whether the much lower royalty rate for the stand-alone chips properly captured that amount, or whether it was somehow both … Mr. Weinstein's report "concludes the sales prices of Samsung's devices increase by an amount tied to the benefits stemming from the accused processors" and that "[t]his approach stays sufficiently clear of the concerns addressed by the 'smallest salable unit' principle." (Dkt. No. 453 at 6.)" *In the United States District Court for the Eastern District of Texas-Marshall Division: Kaist IP US LLC, Plaintiff, v. Samsung Electronics Co., LTD., et al., Defendants. Civil Action No. 2:16-CV-01314-JRG, Memorandum Opinion and Order. Dkt. 676*

"A jury trial commenced in this case on June 11, 2018. On June 15, 2018, the jury returned a unanimous verdict (Dkt. No. 499) finding that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC (collectively, "Samsung"); GlobalFoundries, Inc. and GlobalFoundries U.S. Inc. (collectively, "GlobalFoundries"); and Qualcomm Inc. ("Qualcomm") each infringed one or more claims asserted by Plaintiff KAIST IP US LLC ("KAIST"), such claims being claims 1–6, 11–13, and 15–17 of U.S. Patent No.

6,885,055 (collectively, the "Asserted Claims"); that none of the Asserted Claims were invalid; that Samsung's infringement had been willful; that GlobalFoundries and Qualcomm's infringement had not been willful; that KAIST should recover from Samsung $400,000,000.00 for such infringement as a lump-sum royalty; … KAIST has moved for entry of Final Judgment (Dkt. No. 587), which the Court now GRANTS. Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the foregoing, the Court hereby ORDERS and ENTERS JUDGMENT as follows: 1. Samsung has infringed one or more of the Asserted Claims; 2. GlobalFoundries has infringed one or more of the Asserted Claims; 3. Qualcomm has infringed one or more of the Asserted Claims; 4. The Asserted Claims are not invalid; 5. Samsung's infringement was willful; 6. GlobalFoundries' infringement was not willful; 7. Qualcomm's infringement was not willful; 8. KAIST is hereby awarded damages from and against Samsung and shall accordingly have and recover from Samsung the sum of $203,003,416.00 U.S. Dollars …" *In the United States District Court for the Eastern District of Texas-Marshall Division: Kaist IP US LLC, Plaintiff, v. Samsung Electronics Co., LTD., et al., Defendants. Civil Action No. 2:16-CV-01314-JRG, Final Judgement. Dkt. 678* **Exhibit A**

The Judge in the Qualcomm case erred in dismissing the case for "frivolousness" because valid patents have a place in law and in fact. 35 U.S. Code § 282(a) states In General. "A patent shall be presumed valid. Each claim of a patent (… independent, dependent, or multiple dependent …) shall be presumed valid independently of the validity of other claims".

In the District Courts, invalidity must be proven on the heightened standard of "clear and convincing evidence" before a claim is considered invalid. Invalidating a claim(s) because one feels the technological rational, or person, behind the claimed inventions are "to fantastical" or "to unbelievable" has no basis in law.

Each time a Judge prematurely dismisses Plaintiff's patents; without reviewing the Defendant's invalidity contentions; and without a Marksman Hearing/claim construction, the

Judge involves himself/herself in a conspiracy against rights: 18 U.S.C. § 241: "Section 241

makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in

the United States in the free exercise or enjoyment of any right or privilege secured by the

Constitution or laws of the Unites States or because of his or her having exercised such a right."

Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an

overt act. *Department of Justice* https://www.justice.gov/crt/statutes-enforced-criminal-section#:

 Fair and unbiased means the Defendant Samsung should have included Plaintiff's Motion

for Reconsideration filed in Golden v. Qualcomm case no. 4:22-cv-03283-HSG filed 03/20/2023;

Dkt. 51, **Exhibit B**, and Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for

Reconsideration [submitted and is scheduled for docketing]. **Exhibit C**


Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Supplemental Authority in Support of Plaintiff's Motion for Summary Judgement", was served upon the following Defendant by priority "express" mail:

Hyun Sik Byun

COVINGTON & BURLING LLP

3000 El Camino Real

5 Palo Alto Square

Palo Alto, CA 94306-2112

Telephone: (650) 632-4707

E-mail: hbyun@cov.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAIST IP US LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:16-CV-01314-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD.,, | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC,  SAMSUNG SEMICONDUCTOR, | § | |
| INC.,,  SAMSUNG AUSTIN | § | |
| SEMICONDUCTOR, LLC, | § | |
| GLOBALFOUNDRIES, INC., | § | |
| GLOBALFOUNDRIES U.S. INC., | § | |
| QUALCOMM INC., | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

A jury trial commenced in this case on June 11, 2018. On June 15, 2018, the jury returned a unanimous verdict (Dkt. No. 499) finding that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC (collectively, "Samsung"); GlobalFoundries, Inc. and GlobalFoundries U.S. Inc. (collectively, "GlobalFoundries"); and Qualcomm Inc. ("Qualcomm") each infringed one or more claims asserted by Plaintiff KAIST IP US LLC ("KAIST"), such claims being claims 1–6, 11–13, and 15–17 of U.S. Patent No. 6,885,055 (collectively, the "Asserted Claims"); that none of the Asserted Claims were invalid; that Samsung's infringement had been willful; that GlobalFoundries and Qualcomm's infringement had not been willful; that KAIST should recover from Samsung $400,000,000.00 for such infringement as a lump-sum royalty; that KAIST should recover from GlobalFoundries $0.00 for such infringement; and that KAIST should recover from Qualcomm $0.00 for such infringement.

On January 18, 2019, the Court issued findings of fact and conclusions of law, wherein the Court held that KAIST is not barred from asserting its patent infringement claims based on equitable estoppel or implied license. (Dkt. No. 574.) On February 13, 2020 the Court issued an Order addressing the parties' renewed motions for judgment as a matter of law, motion for new trial, and motion for enhancement of damages under 35 U.S.C. § 284. (Dkt. No. 676.) In that Order, the Court left undisturbed the jury's findings regarding infringement, invalidity, and willfulness but otherwise concluded that the evidence adduced a trial did not support a damages award higher than $101,501,708.00, that an enhancement of two-times that damages amount pursuant to § 284 was appropriate, and that a new trial on damages should be denied conditioned on a remittitur by KAIST of $203,003,416.00. (*Id.*) On February 19, 2020, KAIST accepted remittitur in the amount of $203,003,416.00. (Dkt. No. 677.)

KAIST has moved for entry of Final Judgment (Dkt. No. 587), which the Court now **GRANTS**.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the foregoing, the Court hereby **ORDERS** and **ENTERS JUDGMENT** as follows:

1. Samsung has infringed one or more of the Asserted Claims;

2. GlobalFoundries has infringed one or more of the Asserted Claims;

3. Qualcomm has infringed on or more of the Asserted Claims;

4. The Asserted Claims are not invalid;

5. Samsung's infringement was willful;

6. GlobalFoundries' infringement was not willful;

7. Qualcomm's infringement was not willful;

8.   KAIST is hereby awarded damages from and against Samsung and shall accordingly
     have and recover from Samsung the sum of $203,003,416.00 U.S. Dollars;

9.   KAIST is hereby awarded damages from and against GlobalFoundries and shall
     accordingly have and recover from GlobalFoundries the sum of $0.00 U.S. Dollars;

10.  KAIST is hereby awarded damages from and against Qualcomm and shall accordingly
     have and recover from Qualcomm the sum of $0.00 U.S. Dollars;

11.  Pursuant to Federal Rule of Civil Procedure 54(d), Local Rule CV-54, and 28 U.S.C.
     § 1920, KAIST is the prevailing party in this case and shall recover its costs from
     Defendants, and KAIST is directed to file its proposed Bill of Costs;

12.  Pursuant to 35 U.S.C. § 284, the Court awards pre-judgment interest applicable to all
     sums awarded herein, at the applicable prime rate for each quarter, compounded
     quarterly, from January 1, 2015 until the date of the entry of this Judgment;

13.  Pursuant to 28 U.S.C. § 1961, the Court awards post-judgment interest applicable to all
     sums awarded herein, at the statutory rate, from the date of entry of this Judgment until
     paid; and further

KAIST's Motion for Exceptional Case and Award of Attorney Fees and Costs (Dkt. No.
585) is **CARRIED**. All other requests for relief now pending before the Court and not specifically
addressed herein are **DENIED**.  The Clerk is directed to **CLOSE** the above-captioned case.

**So ORDERED and SIGNED this 21st day of February, 2020.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

F I L E D

MAR 2 0 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LARRY GOLDEN<br><br>*Pro Se* Plaintiff,<br><br>V.<br><br>QUALCOMM INC.<br><br>Defendant. | CASE NO: <u>4:22-cv-03283-HSG</u><br><br>**(JURY TRIAL DEMANDED)**<br><br>**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**<br><br>March 17, 2023 |

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff is as this Court to reconsider its Order Granting Defendant's Motion to Dismiss, Dkt. 49, filed 03/15/2023, and reinstating all of Plaintiff's pending motions.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical— these are all words that can be used to describe a frivolous lawsuit. This Court agreed with the

Magistrate Judge of South Carolina in *Golden v. Google, LLC* to define "frivolousness" and dismiss Plaintiff's Case, "[t]his case was also dismissed with prejudice as frivolous, with the Magistrate Judge specifically noting that Plaintiff could not "circumvent prior rulings by this court that ***infringement allegations*** against Apple/Qualcomm are frivolous." *Golden v. Google, LLC*, 2021 WL 5890440 at *4 (D.S.C. Apr. 9, 2021).

It is my understanding that according to 35 U.S. Code § 271(a)(b)(c), the infringement allegations Plaintiff alleged in this case has an arguable basis either in law or in fact.

(a) Except as otherwise provided in this title, ***whoever*** without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent.

(b) ***Whoever*** actively induces infringement of a patent shall be liable as an infringer.

(c) ***Whoever*** offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

My questions to the Court are: Did the Court dismiss Plaintiff's case because the infringement allegations lack any arguable basis in law or in fact [see 35 U.S. Code § 271(a)(b)(c) above]; or, did the Court dismiss Plaintiff's claims because they are too fantastical, too unbelievable, ridiculous, absurd, ludicrous, and nonsensical? Maybe this Court dismissed Plaintiff's case for the same reasons the Magistrate Judge in the State of South Carolina, the one who started the "frivolous" dismissals; dismissed Plaintiff's case because Plaintiff is only one-third human and does not have the ability to invent;  Plaintiff is property and therefore cannot own property; Plaintiff cannot bring an action in Court against Whites concerning property;

2

Plaintiff needs to know his place and then stay in his place; someone who looks like Plaintiff does not deserve a fair trial or trial by his peers.

According to 35 U.S. Code § 271(d), Plaintiff is well within his rights to bring an action against Qualcomm for infringement allegations with patents issued with the presumption of validity, and chats to show an element-by-element infringement.

> 35 U.S. Code § 271(d) "No patent owner otherwise entitled to relief for infringement; or, contributory infringement of a patent shall be denied relief or deemed guilty of misuse [] of the patent right by reason of his having done one or more of the following: (3) sought to enforce his patent rights against infringement or contributory infringement …"

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). In this current case Plaintiff's patents-in-suit were issued with the presumption of validity, and just the patents *validity* alone provides an arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989) that this case not be dismissed for frivolousness.

> 35 U.S. Code § 282(a) In General. "A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

Qualcomm is broadcasting and falsely advertising to the World, they are the one responsible for the creation of the modern-day smartphone and the CPU designed specifically for the smartphone:

- "Enabling the rise of the smartphone: Chronicling the developmental history at Qualcomm: An engineer looks back at Qualcomm's essential role in groundbreaking

innovations, key technology developments, and bold integration decisions in creating today's smartphone. DEC 8, 2020 Snapdragon and Qualcomm branded products are products of Qualcomm Technologies, Inc. and/or its subsidiaries." https://www.qualcomm.com/news/onq/2020/12/enabling-rise-smartphone-chronicling-developmental-history-qualcomm

- "Qualcomm is the San Diego region's largest publicly traded company and the county's largest telecommunications employer. A world leader in wireless technologies, Qualcomm is also a driver of local and global innovation. Qualcomm invented technologies at the heart of 3G and 4G wireless and the first smartphone, and Qualcomm continues to pioneer new technologies that range from 5G to artificial intelligence, the industrial internet of things (IoT) to artificial, and augmented reality." https://www.sandiegobusiness.org/sites/default/files/EDC-QUALCOMM-STUDY-FINAL%20-WEB2.pdf

- "Qualcomm has grown to manufacture and market semiconductor components throughout the years. It also created semiconductor components and software for automobiles, watches, laptop computers, wireless networks, smartphones, and other devices" https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators

- "Qualcomm has been one of the main suppliers of smartphone chipsets. These chipsets range from midrange to flagship chipsets with the best specs known at the time of their launch. While most Android phones use Qualcomm Snapdragon chipset, Qualcomm manufactures smartphones" https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators

- "Qualcomm has been a technology innovator for many years, monetizing R&D on two fronts: marketing smartphones and other smart devices for sensors, and paying patent licensing" … https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

- "In December 2007, the Snapdragon QSD8250 was released. It included the first 1 GHz mobile phone CPU. Qualcomm's "Krait" microarchitecture was introduced in the second generation of Snapdragon SoCs in 2011, allowing each CPU core to alter its speed dependent on the needs of the device." https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

4

- "Qualcomm Snapdragon is a line of system-on-a-chip (SoC) semiconductor components manufactured and marketed by Qualcomm Technologies Inc. for mobile smartphones. The ARM architecture is used by Snapdragon's central processing unit (CPU). A single SoC may include multiple CPU cores, an Adreno GPU, a Snapdragon wireless modem, a Hexagon digital signal processor (DSP), a Qualcomm Spectra image signal processor (ISP), and other software and hardware to support a smartphone's GPS, camera, video, audio, gesture recognition, and AI acceleration."
  https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

My question to the Court is: Why not order Qualcomm to produce to the Court, before dismissing Plaintiff's case, at least one of its 130,000 patents that antedates Plaintiff's patents for at least the smartphone and/or the CPU made for the smartphone? Qualcomm has had multiple opportunities over multiple years to present the patents, but fail to do so. As indicated above, Qualcomm is advertising they are the creator of the smartphone. Qualcomm is openly disclosing to the World they are charging 4% / 5% on the selling price of Plaintiff's claimed invention.

> "Qualcomm 5G NR Royalty Terms Statement: "Qualcomm will continue to offer licenses for OEM branded mobile handsets that include both Qualcomm's cellular standard essential patents as well as those patents not essential to the standard, a total portfolio of over 130,000 patents and pending applications worldwide at royalty rates of 4% of the selling price for branded single-mode handsets [smartphones] and 5% of the selling price for branded multi-mode handsets [smartphones]." https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/qualcomm-5g-nr-royalty-terms-statement.pdf

Possible grounds for Qualcomm to challenge the validity of a Plaintiff's patent may include:

1. The patented invention is not novel because of prior art;

2. The patented invention consists of obvious subject matter, based on prior art;

3. The patent claims are so unclear or ambiguous that they "fail to inform, with reasonable certainty," people with knowledge of the subject matter involved (*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)); or

4. The patent holder omitted information or provided inaccurate information when applying to the USPTO.

This Court stated, "Plaintiff also fails to adequately plead contributory or induced infringement" … "As for contributory infringement, Plaintiff fails to plead any of the elements of that [contributory] offense:"

(1) selling a device capable of infringing the patent, which is not suitable for substantial non-infringing use. The Court is quoted as saying, "[f]or example, Plaintiff fails to plead facts plausibly supporting a claim that the Snapdragon chipsets or Snapdragon ride platform do not have other noninfringing uses. See *Uniloc U.S.A., Inc. v. Logitech, Inc.*, No. 18-cv-01304, 2018 WL 6025597 (N.D. Cal. Nov. 17, 2018) (granting motion to dismiss where plaintiff "fail[ed] to provide factual underpinnings for its allegations that there are no substantial noninfringing uses of the accused devices")."

- The Snapdragon chipsets are not suitable for substantial non-infringing use because Plaintiff's patented CPUs are "tied" to Qualcomm's Snapdragon chipsets. The CPU or processor is one of the first components that we identify in a phone. The CPU of a phone, just like that of a computer, is responsible for processing general data on a day-to-day basis. If we want to open a program, the CPU is the one that requests the information from the storage and transfers it to the RAM memory. Something curious is that the CPU does not have a single specialized role, but its operation is present in practically all the tasks of the phone. In modern smartphones, most CPUs tend to

have 8 cores. An 8 core CPU can run 8 hardware threads simultaneously, or 16 if it has 2-way hyperthreading. The CPU is considered the "brains" of the smartphone. Hypothetically, Qualcomm's modems would receive operational and functional instructions from Plaintiff's patented CPUs.

(2) with knowledge that the infringing device was especially adapted for use in an infringement of such patent.

- Plaintiff reference Qualcomm's knowledge at ¶¶ 44-51, 55, 60, 69-70, & 90 of the Complaint.

- "On November 4, 2010, Plaintiff emailed Kate Lane, Strategic IP, Qualcomm Incorporated (E-mail: clane@qualcomm.com); Direct: (858-658-2047)), to inform Ms. Lane of certain patented technology (i.e., CMDC—Smartphone—device; central processing unit (CPU); and, a Stall, Stop, and Vehicle Slowdown System for manned and unmanned electric, autonomous, and driverless vehicles).

- Plaintiff asked if Qualcomm would be interested in entering into a licensing agreement with the Patent Owner (Plaintiff). Subject: "Patented Technology for Qualcomm's Review (copy available upon request).

- Plaintiff mailed out letters dated December 7, 2010 addressed to the attention of Qualcomm's Chairman & CEO Dr. Paul E. Jacobs and Qualcomm's EVP & President Derek Aberle, (copies of the letters and return receipts are available upon request) informing the Executives of the Patent Owner's (Plaintiff) patented technology and asked if they would be interested in entering into a licensing agreement with the Patent Owner (Plaintiff).

- After 10 months, Ms. Lane responded back via e-mail on September 29, 2011 with, "Hi Larry, I'm just checking in to see if this portfolio is still available for purchase. Please let me know. Thank you, Kate".

- On October 5, 2011, Ms. Lane responded via e-mail, "Thanks Larry, [c]an you please take a few moments to fill out the attached Patent Information Request form for this? Please let me know if you have any questions. Best regards, Kate" (copy available upon request).

- On October 11, 2011, the Patent Owner (Plaintiff) returned via e-mail, the answered Patent Information Request form to Ms. Lane. The Patent Owner (Plaintiff) made several attempts to contact Ms. Lane via e-mail and by phone after that, but never heard back from Ms. Lane.

(3) actual infringement by another.

- Element 3 is why Plaintiff submitted the Claim Chart on Samsung—to show actual infringement by another. The Samsung Claim Chart compares nine (9) of Samsung's allegedly infringing products as infringing at least independent claim 1 of Plaintiff's '497 patent; claim 10 of Plaintiff's '752 patent; claims 1-9 of Plaintiff's '189 patent; claims 13-23 of Plaintiff's '439 patent; and, claims 4-6 of Plaintiff's '287 patent. Twenty-five (25) independent patent claims asserted that covers Plaintiff's patented smartphone and CPU. Plaintiff also alleged infringement of independent claims 1 & 11, and dependent claims 2-10 & 12-20 Plaintiff's '619 patent. Samsung was selected because Plaintiff believes Samsung actually infringes Plaintiff's patents, and Samsung is Qualcomm's No. 1 customer.

8

Plaintiff diligently pled all the elements to support a claim of contributory infringement in Plaintiff's complaint. Which makes Plaintiff question the Court's motive. Plaintiff can accept it if the Court erred in missing one of the elements described in Plaintiff's complaint, but to miss all three. Please explain, how is that even possible?

**The Court writes**: "The Complaint alleges that "[u]pon information and belief, Plaintiff believes Qualcomm has formed or created its monopoly for chipsets by 'tying' Plaintiff's CPUs to its wireless cellular modems." Compl. ¶ 52. The theory appears to be that "Qualcomm's 'hold out' strategy of 'no license, no chip' was used to force the co-conspirator OEMs to purchase Plaintiff's patented CPU that Qualcomm 'tied' to its modem." Id. ¶ 54. The alleged harm appears to be that "Qualcomm's anticompetitive practices has [sic] restrained Plaintiff from entering the market to collect royalties on his patented inventions." Id. ¶ 83. Plaintiff relies heavily throughout the complaint on the district court's findings in *FTC. v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), and attaches a copy of that decision to the complaint, without recognizing that the case was reversed and vacated by the Ninth Circuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001- 1002 (9th Cir. 2020)"

**Plaintiff stated**: at ¶ 54 of Plaintiff's complaint, "'Tying' under U.S. law is defined as "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product."

**Qualcomm admits**: "Qualcomm itself has admitted that plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (acknowledging that the FTC "never made" a "tying" claim). In remanding this case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with

Plaintiffs that the merits of Plaintiffs' case were not at issue in the limited 23(f) appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

The Ninth Circuit never weigh in, or give an opinion on whether or not it is okay, or even legal for someone to collect royalties on another's patented inventions without authorization or license to do so. Likewise, this Court has not weigh in on whether or not it is okay, or even legal for someone to collect royalties on another's patented inventions without authorization or license to do so.

It's very important we receive an answer to this question because it could reshape the entire patent industry or destroy it all together. If the answer is "yes", it takes away the need for anyone, anywhere to ever apply for and obtain a patent. Which also means the 130,000 patents Qualcomm currently hold will become worthless. If the answer is "no" it means Qualcomm needs to cease and desist collecting royalties on Plaintiff's patented CMDC devices i.e., handsets, cell phones, smartphones.

According to 35 U.S. Code § 271(a) … *whoever* without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent; and according 35 U.S. Code § 271(c) … *Whoever* offers to sell or sells within the United States [] a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, … shall be liable as a contributory infringer.

"If someone **_uses_** your invention without your permission, you are entitled to stop their **_use_** of the invention by seeking a legal injunction in Federal court. In addition, you are entitled to collect damages for any unlicensed **_use_** of your invention. Damages are generally calculated based on lost profits that you suffered as a result of the infringement,

or if you are not actually producing the product, to the unjust enrichment the infringer received through the unauthorized ***use*** of your patent. If the infringer ***used*** your technology knowingly and willfully, you may be entitled to receive up to three times the actual damages suffered" *Carr & Ferrell LLP, one of Silicon Valley's foremost technology law firms, and specializes in patent and intellectual property law matters,* https://www.carrferrell.com/what-if-someone-uses-my-patented-invention-without-my-permission

**Antitrust Injury**

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., new and improved cell phone; smartphone). Plaintiff alleged "Qualcomm engaged in 'anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power'." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset sold (i.e., new and improved cell phone; smartphone).

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model.

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips. Here, Judge Koh, quoting the D.C. Circuit's decision

11

in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in "anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a *5% running royalty on the price of each handset sold*. These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition. The Federal Trade Commission Act bans "unfair

methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said

all violations of the Sherman Act also violate the FTC Act.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the

Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a

  supply agreement, while simultaneously licensing its SEPs to them under what it called a

  'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay

  royalties of 5% on the price of each phone sold...

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to

receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's

patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold;

and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include

Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent;

which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the

phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude

Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself.

Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate

revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court.

Qualcomm's anticompetitive practices has restrained Plaintiff from entering the market to

collect royalties on his patented inventions. Plaintiff is entitled to collect damages from

Qualcomm for any unlicensed use of his inventions. Damages are generally calculated based on

lost profits Plaintiff suffered as a result of the antitrust injury.

If nothing else happens as a result of Plaintiff's motion for reconsideration, please answer the following: Is it legal for Qualcomm to tie Plaintiff's patented CPUs to its chipsets without authorization or license to do so? Is it legal for Qualcomm to collect a royalty off of Plaintiff's patented CMDC devices i.e., handsets, cell phones, smartphones without authorization or license to do so? Is it legal for Qualcomm to collect a royalty off of Plaintiff's patented Central Processing Units (CPUs) without authorization or license to do so?

Ever since the late 1940s, when the Supreme Court stated in *International Salt Co. v. United States* that "it is unreasonable, per se, to foreclose competitors from any substantial market," and in *Standard Oil Co. v. United States* that "[t]ying agreements serve hardly any purpose beyond the suppression of competition," U.S. courts have found tying to be *per se* unlawful.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

**FIRMLY TO SEAL**





US POSTAGE PAID
PME 1-Day
GREENVILLE, SC
29606
MAR 17, 23
AMOUNT
**$28.75**
R2303S102300-09

RDC 07          94612

# ORITY
# AIL
# PRESS®



**UNITED STATES POSTAL SERVICE**          **PRIORITY MAIL EXPRESS®**

EI 436 403 824 US

### CUSTOMER USE ONLY

**FROM:** (PLEASE PRINT)   PHONE 864-288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**T RATE**
**ELOPE**
E ■ ANY WEIGHT

**PAYMENT BY ACCOUNT** (if applicable)

| USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No. |
|---|---|

**ORIGIN (POSTAL SERVICE USE ONLY)**

☑ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 29606 | 031823 | $ 28.75 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 031723 | ☐ 10:30 AM ☑ 3:00 PM | $ | $ |

| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 241 | ☐ AM ☑ PM | $ | $ |

**SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)   PHONE 510-637-3530

U.S. DISTRICT COURT - NDC - OAKLAND
CASE No: 4:22-CV-03283
1301 CLAY STREET
OAKLAND, CA

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | $ 28.75 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| _____ lbs. | | MSF |

**ZIP + 4®** (U.S. ADDRESSES ONLY)

9 4 6 1 2 - _ _ _ _

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, MAY 2021          PSN 7690-02-000-9996



**PS.COM/PICKUP**

lule free Package Pickup,
can the QR code.



S10001000006

**◀ PEEL FROM THIS CORNER**

EP13F May 2020
OD: 12 1/2 x 9 1/2

   

**UNITED STATES POSTAL SERVICE**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuse may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Motion for Reconsideration", was served upon the following Defendant by priority "express" mail:

Joseph John Stevens

PATTERSON & SHERIDAN, LLP

50 West San Fernando Street, Suite 250

San Jose, CA 95113

Phone: (650) 384-4418

Fax: (650) 330-2314

Email: jstevens@pattersonsheridan.com

**FILED**

MAR 20 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

**S** FIRMLY TO SEAL



U.S. POSTAGE PAID
PME 1-Day
GREENVILLE, SC
29606
MAR 17 23
AMOUNT

**$28.75**

RDC 07          94612          R2303S102300-09

# **ORITY**
# **AIL**
# **PRESS**®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.



EI 436 403 824 US

## **UNITED STATES POSTAL SERVICE**®  |  **PRIORITY MAIL EXPRESS**®

# **T RATE**
# **ELOPE**
E ■ ANY WEIGHT

dule free Package Pickup,
can the QR code.



PS.COM/PICKUP



S10001000006

EP13F May 2020
OD: 12 1/2 x 9 1/2

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )  864-288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**

■ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( ) 510-637-3530

U.S. DISTRICT COURT - NDC - OAKLAND
CASE No: 4:22-CV-03283
1301 CLAY STREET
OAKLAND, CA

ZIP + 4® (U.S. ADDRESSES ONLY)

9 4 6 1 2 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

⬎ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT** (if applicable)
USPS® Corporate Acct. No.          Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☒ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | | Postage |
| 29606 | 03/18/23 | | $ 28.75 |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | | Insurance Fee | COD Fee |
| 031723 | ☐ 12:00 PM | | $ | |
| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
| 241 | ☐ AM ☒ PM | | $ | |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
| $ | $ | $ 28.75 |
| Weight | ☒ Flat Rate | Acceptance Employee Initials |
| lbs. ozs. | | MH |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | | Employee Signature |
|---|---|---|---|
| | ☐ AM ☐ PM | | |
| Delivery Attempt (MM/DD/YY) | Time | | Employee Signature |
| | ☐ AM ☐ PM | | |

LABEL 11-B, MAY 2021          PSN 7690-02-000-9996

   **UNITED STATES POSTAL SERVICE**®

Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN<br><br>*Pro Se* Plaintiff,<br><br>V.<br><br>QUALCOMM INC.<br><br>Defendant. | CASE NO: 4:22-cv-03283-HSG<br><br>**(JURY TRIAL DEMANDED)**<br><br>**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**<br><br>March 27, 2023 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff is asking this Court to reconsider its Order Granting Defendant's Motion to Dismiss, Dkt. 49, filed 03/15/2023, and reinstating all of Plaintiff's pending motions.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical— these are all words that can be used to describe a frivolous lawsuit.

A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 117 (1994). The review of such a motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).

Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citing *Scheuer*, supra, 416 U.S. at 236).

All Plaintiff's cases concern motions to dismiss. Such motions do not resolve whether Plaintiff will ultimately prevail, but simply whether the complaint was sufficient to cross the Court's pleading threshold. In *Intel Corp. v. Future Link Sys., LLC*, the District of Delaware considered a policy of non-review of patents in the context of a motion for summary judgment … the Court denied Intel's motion. In so doing, however, the Court noted that "[i]t may be difficult to see how a reasonable factfinder would view" Intel's conduct—including an alleged "corporate atmosphere encouraging employees to 'turn a blind eye' to patents"—to be "egregious . . . wanton, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Intel Corp. v. Future Link Sys., LLC*, 268 F.Supp.3d 605, 608–09 (2017). Qualcomm has "turn[ed] a blind eye to [plaintiff's] patents".

2

Every time, and in every court, the Judge improperly dismisses Plaintiff's patents as "frivolous", the Judge improperly expands the scope of the Defendants' patents—used to restrain trade beyond enforcing the exclusive rights that a lawfully obtained patent provides and expands the scope of the patent beyond its boundaries. Plaintiff refers to the dismissals as a dismissal of his patents, instead of cases, because the patents are at the core of all Plaintiff's pleadings.

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). Proving anti-competitive practices, "tying", and unjust enrichment in court requires Plaintiff to prove two broad elements: ownership and validity of the patented inventions, and the "use" or "misuse" of the patented inventions by the defendant(s).

The Trial Court erred in dismissing this current case for "frivolousness" because valid patents have a place in law and in fact. 35 U.S. Code § 282(a) states In General. "A patent shall be presumed valid. Each claim of a patent (… independent, dependent, or multiple dependent …) shall be presumed valid independently of the validity of other claims". In the District Courts, invalidity must be proven on the heightened standard of "clear and convincing evidence".

Each time a Judge prematurely dismisses Plaintiff's patents; without reviewing the Defendant's invalidity contentions; and without a Marksman Hearing/claim construction, the Judge involves himself/herself in a conspiracy against rights: 18 U.S.C. § 241: "Section 241 makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the Unites States or because of his or her having exercised such a right." Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act. *Department of Justice* https://www.justice.gov/crt/statutes-enforced-criminal-section#:

3

The Northern District of California Judges has improperly dismissed Plaintiff's [patents] cases against Apple, Intel, and Qualcomm as "frivolous", while overlooking and allowing for the Defendants' "misuse" of their patents. Apple's "misuse" involves the use of its first *design* patent (2007) as the first *utility* patent for the smartphone. Intel continues to claim the right to exclude others and collects royalties on old, outdated, and expired patents. Qualcomm forces its customers to pay royalties on unpatented products, or products that are patented by the Plaintiff.

The one time the Federal Circuit in *Larry Golden V. Google LLC*; CAFC Case No. 22-1267 issued a decision that Plaintiff's complaint and claim charts are not "facially frivolous" because "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189" … "Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart" [vacated and remanded]; the Northern District of California Judges in Apple, Intel, and Qualcomm blatantly disrespected the opinion of the Federal Circuit that Plaintiff's [patents] are not "facially frivolous", and reverted back to improperly dismissing Plaintiff's patents as "frivolous"; meaning the patents "lacks any arguable basis either in law or in fact" *Neitze v. Williams*, 490 U.S. 319, 325 (1989).

Question: Are the Judges willfully depriving Plaintiff of his rights and privileges that are protected by the Constitution and laws of the United States? [1]

---

[1] TITLE 18, U.S.C., SECTION 242 Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, **as well as judges**… *Department of Justice*

The Trial Court erred in dismissing Plaintiff's *Golden v. Qualcomm* Case No. 4:22-cv-03283-HSG as having already been decided in *Golden v. US* Case No. 13-307C. *Golden v. US* was a case against the United States Government—for infringement allegations against the DHS.

## Patent Misuse Reform Act of 1988

In 1988, Congress enacted legislation that narrowed the scope of the patent misuse by creating safe harbors for patent holders in 35 U.S.C. § 271(d). It clarified that patentees did not misuse their patents by suing people creating products which could be used to infringement patents (contributory infringement). Requiring people to buy another license or product to obtain a patented product is also not misuse, unless the patentee holds "market power."

Qualcomm has two primary business units. Its chip (or chipset) division designs cellular modems that allow phones to communicate with cellular networks and markets those modem chips to independent device producers (also referred to as original equipment manufacturers or OEMs). Its licensing division negotiates with the same OEM customers to secure royalty-bearing patent license agreements. "*Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm*"; the antitrust source www.antitrustsource.com February 2022.

Qualcomm has market power in both lines of business. In particular, its chip division accounts for a very high share of modem sales for certain wireless technologies (CDMA and high-end LTE). At the same time, its licenses grant rights to standard essential patents (SEPs), which OEMs and rival chipmakers must infringe in order to practice the protocols that allow independently designed networks and devices to communicate. https://www.americanbar.org/

In a tying arrangement, the sale of one product is conditioned on the buyer's [OEMs—Google; Samsung, etc.] agreement to take a second good as well. In such cases, the antitrust

plaintiff (Golden) usually identifies one product as the "tying good" (Qualcomm's Snapdragon chipset) and the other as the "tied good" (Golden's patented CPUs).

In a typical case, the defendant (Qualcomm) already possesses a monopoly in the market for the tying product (Qualcomm's Series of Snapdragon chipset that includes its modems), whereas many consumers would have bought the tied good (Golden's patented CPU) from another provider but for the tie. The alleged exclusion therefore occurs in the tied market.

As described above, Qualcomm's tying strategy involved discounts and incentives for handset producers that agreed to purchase chipsets primarily or exclusively from Qualcomm. While the most notable example was a set of contracts with Apple that provided large royalty rebates conditioned on exclusivity. Judge Koh's decision also noted that similar terms were offered to Blackberry, LG Electronics, Samsung, and Motorola. *Qualcomm*, 2019 WL 2206013 at *153–54. https://www.americanbar.org/content/dam/aba/publishing/antitrust-magazine-online/2020/feb-2020/feb20_hovenkamp_2_13f.pdf

**Qualcomm admits**: "Qualcomm itself has admitted that Plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc*., Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (*acknowledging that the FTC "never made" a "tying" claim*). "In remanding the case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with Plaintiffs that the merits of Plaintiffs' case were not at issue in the … [] appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

The following charts illustrates how Qualcomm uses "tying" to maintain its monopoly and the significance of Plaintiff's CPUs in the tying arrangement to Qualcomm's revenue.

**The Impact of "Tying" Plaintiff's Central Processing Units (CPUs)**

Qualcomm's Baseband Processor (modem) is a mobile Semiconductor Device or chip in a smartphone, smartwatch, tablet, or other mobile device that convert digital data into radio frequency signals and manages all the radio functions.



A baseband processor allows devices to connect to wireless cellular networks. It is used in conjunction with a *Central Processing Unit or (CPU)*. Inside every cellular device is a component known as a cellular modem, which handles the actual communications with the cellular network.



Qualcomm Snapdragon Gen 8 Deep Dive CPU Display

7

"Intelligent system-level integration of the digital baseband (modem), RF transceiver, and all key RF front-end components." "The CPU *processors* utilize a strong heritage in engineering to deliver best-in-class security, AI, and connectivity solutions" *Qualcomm* https:// www.qualcomm.com/products/technology/processors#:



Snapdragon 888 Modem-RF System

The Ninth Circuit never weighed in, or issued an opinion on whether or not it is okay, or even legal for Qualcomm, or anyone, to collect royalties on another's patented inventions (i.e.,

CMDC devices; CPUs) without authorization or license to do so. Likewise, this Court has not weighed in on whether or not it is okay, or even legal for Qualcomm, or anyone to collect royalties on Plaintiff's patented inventions (i.e., CMDC devices; CPUs) without authorization or license to do so.

Below, is a summary chart that illustrates three (3) original engineering manufacturers (OEMs)—Google; Samsung, Asus/Qualcomm—allegedly infringing smartphones, that illustrates the chipsets Qualcomm "contributes" to the infringing smartphones; and the allegedly infringing CPUs "tied" to Qualcomm's modems, that are forced on the OEMs thru "no license, no chip"

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Asus / Qualcomm Smartphone for Snapdragon Insiders |
|---|---|---|
|  |  |  |
| **Chipset**: Qualcomm Snapdragon 765G | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) |
| **Modem**: Snapdragon® X52 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. |
| **CPU**: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) |
| **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11 |

## Antitrust Injury

"Qualcomm's first weapon against competitors: patent licensing terms requiring customers (i.e., OEMs) to **pay a royalty on every phone sold**… This gave Qualcomm an inherent advantage in competition with chipmakers… Qualcomm could afford to cut the price of its own chips, knowing that the customer would still be paying Qualcomm a hefty patent licensing fee on every phone." *Qualcomm's chip deals boxed out competitors*, https://arstechnica.com/tech-policy/2019/05/how-qualcomm-shook-down-the-cell-phone-industry-for-almost-20-years/

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., cell phone; smartphone).

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset (i.e., new and improved cell phone; smartphone) Qualcomm collects on, and each allegedly infringing CPU Qualcomm sells.

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model [that includes the "tied" CPU].

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips [and CPUs]. Here, Judge Koh, quoting the D.C. Circuit's decision in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in

"anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a ***5% running royalty on the price of each handset sold***. These licenses are called Subscriber Unit License Agreements ("SULA") ..."

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition. The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said all violations of the Sherman Act also violate the FTC Act.

11

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a supply agreement, while simultaneously licensing its SEPs to them under what it called a 'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay royalties of 5% on the price of each phone sold…

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold; and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent; which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself. Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court. Qualcomm's anticompetitive practices restrained Plaintiff from entering the market to collect royalties. Plaintiff is entitled to collect damages from Qualcomm that are calculated based on lost profits Plaintiff suffered as a result of the antitrust injury.

The above-described injuries to the Plaintiff are of a type that the antitrust laws were intended to prevent; and Plaintiff's injuries flows from that which makes the Defendant's acts unlawful.

**The Anti-Competitive Impact on Qualcomm's Competitors; Plaintiff's Antitrust Injury; Intellectual Property Theft; and the Break-Down of the Entire Patent System**

If Qualcomm is allowed to collect royalties on anyone's patented inventions without authorization or legal right to do so; allowed to "tie" anyone's patented inventions to their own while forcing competitors to compete against the illegal "tie"; contributing to the infringement of its customers by contributing the Snapdragon Series of Chipsets that includes the "tying" product Qualcomm's wireless cellular modems and the "tied" product Plaintiff's patented CPUs; inducing the infringement of its customers with its "no license, no chip" policy of purchasing the "tied" and "tying" products when both can be sold separately, Qualcomm will eventually destroy the entire patent grant system.

Qualcomm was given notice by the Plaintiff and by the DOJ that its smartphones may infringe upon Plaintiff's patented CMDC devices; after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) it is alleged that Qualcomm willfully violated certain Antitrust laws i.e., tying arrangements, maintaining a monopoly, etc. Qualcomm, having knowledge of Plaintiff's inventions, willfully violated certain antitrust laws—elements of Clayton Act 4]; and, after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) Qualcomm's willfully infringed Plaintiff's patents; constitutes a complete breakdown of the Patent grant system.

Unjust enrichment stems from the theory that no one [Qualcomm] should be allowed to profit at another's [Plaintiff] expense in circumstances which suggest mistake, fraud, illegality or bad faith.  Unjust enrichment claims may exist with or without a contract between the parties. The elements of Qualcomm's unjust enrichment exist because:

13

1. Plaintiff provided something of value to Qualcomm;

2. Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and,

3. It would be inequitable for the Qualcomm to enjoy the benefit(s) Plaintiff provided without compensating Plaintiff.

In this case, and in Plaintiff's related cases, the cases were dismissed because the Courts agreed with Defendants' that "the same patent claims have been presented and denied as "frivolous". Plaintiff believes Qualcomm, and others named in the related cases, business practices and behavior is no less than the characteristics of "pirating".

Qualcomm's violations are far worse than having a policy of not reviewing the patents of others. Qualcomm has deliberately ignored Plaintiff's patents, and as long as the Courts are complicit with Qualcomm's practices, and not demand Qualcomm to appear to defend the allegations brought against them, Qualcomm will continue to "pirate" its competitors or potential competitors, and Plaintiff until it destroys the entire patent grant system.

## Intellectual Property Thief

Qualcomm's intellectual theft occurs when Qualcomm steals or uses without permission Plaintiff's intellectual property (IP). Qualcomm's theft of intellectual property happens when Qualcomm knowingly uses, misappropriates, takes, or steals Plaintiff's property that falls under the protection of laws around intellectual property. In order to qualify as theft, Plaintiff's intellectual property is used, and royalties collected, without the consent of Plaintiff.

IP theft is an extremely expensive problem that costs businesses in the United States billions of dollars annually [antitrust violation], so the FBI has gotten more involved recently by making the investigation and prevention of this issue more of a priority. Intellectual theft is

14

quick, easy, and cheap to commit. All that has to happen for Qualcomm to steal Plaintiff's intellectual property is to copy Plaintiff's work, idea, or product.

It's possible for intellectual property thieves, such as Qualcomm, to financially benefit from their theft by collecting royalties on the inventions without having a license agreement or legal right to do so. This loss of profit can affect the owner [Plaintiff] of the intellectual property deeper than just a simple theft.

For any type of stolen intellectual property, the first step is generally to send a cease-and-desist letter. Plaintiff's cease-and-desist letter was the first contact with the intellectual property thief to just let them know they need to stop using and stealing Plaintiff's intellectual property.

The majority of intellectual property cases are tried as federal cases, making them federal crimes. The possible consequences of intellectual property theft are: * Criminal fines, * Imprisonment (the length of time depends on the nature of the charges), * Seizure of the stolen intellectual property, * Civil charges (could include business profits lost due to the theft), * Suspension or loss of an operating license held by a business. The laws around intellectual property protection come with stiff, costly penalties for violation.

If Qualcomm is allowed to collect royalties on Plaintiff's patented inventions without authorization or legal right to do so, then Plaintiff should likewise be allowed to collect royalties on Qualcomm's patented inventions without authorization or legal right to do so. For that matter, anyone who is currently paying Qualcomm royalties on inventions covered by Qualcomm patents should be allowed to stop, because Qualcomm has changed patent law to read; "it's okay to collect tens of billions of dollars in royalties on the inventions of someone else without being authorized to collect the royalties or having the legal right to do so".

Qualcomm should be enjoined to cease collecting royalties on CMDC devices (cell phones) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CMDC devices (handsets) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be enjoined to cease collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for contributing to the infringement of Plaintiff CMDC devices with Plaintiff's patented CPUs Qualcomm has "tied" to its Snapdragon chipset [Qualcomm threatens and force OEMs to purchase the "tied" and "tying" products together; "no license, no chip".

Note: In *Golden v. Qualcomm*, Case 4:22-cv-03283-HSG Dkts 1-5, 1-6, & 1-7 Filed 06/06/22, are supportive claim charts for direct, contributory, induced, 'doctrine of equivalents' and willful infringement. Nine (9) alleged infringing products that infringes twenty-five (25) of Plaintiff's patent claims—claim 1 of '497 patent; claim 10 of '752 patent; claims 1-9 of '189 patent; claims 13-23 of '439 patent; and claims 4-6 of '287 patent. Claims 1-20 of '619 patent not included in charts but asserted in case.

Sincerely,

_____

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration", was served upon the following Defendant by priority "express" mail:

Joseph John Stevens

PATTERSON & SHERIDAN, LLP

50 West San Fernando Street, Suite 250

San Jose, CA 95113

Phone: (650) 384-4418

Fax: (650) 330-2314

Email: jstevens@pattersonsheridan.com

_____

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

17

The Northern District of California Judges has improperly dismissed Plaintiff's [patents] cases against Apple, Intel, and Qualcomm as "frivolous", while overlooking and allowing for the Defendants' "misuse" of their patents. Apple's "misuse" involves the use of its first *design* patent (2007) as the first *utility* patent for the smartphone. Intel continues to claim the right to exclude others and collects royalties on old, outdated, and expired patents. Qualcomm forces its customers to pay royalties on unpatented products, or products that are patented by the Plaintiff.

The one time the Federal Circuit in *Larry Golden V. Google LLC*; CAFC Case No. 22-1267 issued a decision that Plaintiff's complaint and claim charts are not "facially frivolous" because "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189" … "Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart" [vacated and remanded]; the Northern District of California Judges in Apple, Intel, and Qualcomm blatantly disrespected the opinion of the Federal Circuit that Plaintiff's [patents] are not "facially frivolous", and reverted back to improperly dismissing Plaintiff's patents as "frivolous"; meaning the patents "lacks any arguable basis either in law or in fact" *Neitze v. Williams*, 490 U.S. 319, 325 (1989).

Question: Are the Judges willfully depriving Plaintiff of his rights and privileges that are protected by the Constitution and laws of the United States? [1]

---

[1] TITLE 18, U.S.C., SECTION 242 Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, **as well as judges**… *Department of Justice*

The Trial Court erred in dismissing Plaintiff's *Golden v. Qualcomm* Case No. 4:22-cv-03283-HSG as having already been decided in *Golden v. US* Case No. 13-307C. *Golden v. US* was a case against the United States Government—for infringement allegations against the DHS.

## Patent Misuse Reform Act of 1988

In 1988, Congress enacted legislation that narrowed the scope of the patent misuse by creating safe harbors for patent holders in 35 U.S.C. § 271(d). It clarified that patentees did not misuse their patents by suing people creating products which could be used to infringement patents (contributory infringement). Requiring people to buy another license or product to obtain a patented product is also not misuse, unless the patentee holds "market power."

Qualcomm has two primary business units. Its chip (or chipset) division designs cellular modems that allow phones to communicate with cellular networks and markets those modem chips to independent device producers (also referred to as original equipment manufacturers or OEMs). Its licensing division negotiates with the same OEM customers to secure royalty-bearing patent license agreements. "*Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm*"; the antitrust source www.antitrustsource.com February 2022.

Qualcomm has market power in both lines of business. In particular, its chip division accounts for a very high share of modem sales for certain wireless technologies (CDMA and high-end LTE). At the same time, its licenses grant rights to standard essential patents (SEPs), which OEMs and rival chipmakers must infringe in order to practice the protocols that allow independently designed networks and devices to communicate. https://www.americanbar.org/

In a tying arrangement, the sale of one product is conditioned on the buyer's [OEMs—Google; Samsung, etc.] agreement to take a second good as well. In such cases, the antitrust

plaintiff (Golden) usually identifies one product as the "tying good" (Qualcomm's Snapdragon chipset) and the other as the "tied good" (Golden's patented CPUs).

In a typical case, the defendant (Qualcomm) already possesses a monopoly in the market for the tying product (Qualcomm's Series of Snapdragon chipset that includes its modems), whereas many consumers would have bought the tied good (Golden's patented CPU) from another provider but for the tie. The alleged exclusion therefore occurs in the tied market.

As described above, Qualcomm's tying strategy involved discounts and incentives for handset producers that agreed to purchase chipsets primarily or exclusively from Qualcomm. While the most notable example was a set of contracts with Apple that provided large royalty rebates conditioned on exclusivity. Judge Koh's decision also noted that similar terms were offered to Blackberry, LG Electronics, Samsung, and Motorola. *Qualcomm*, 2019 WL 2206013 at *153–54. https://www.americanbar.org/content/dam/aba/publishing/antitrust-magazine-online/2020/feb-2020/feb20_hovenkamp_2_13f.pdf

**Qualcomm admits**: "Qualcomm itself has admitted that Plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (*acknowledging that the FTC "never made" a "tying" claim*). "In remanding the case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with Plaintiffs that the merits of Plaintiffs' case were not at issue in the … [] appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

The following charts illustrates how Qualcomm uses "tying" to maintain its monopoly and the significance of Plaintiff's CPUs in the tying arrangement to Qualcomm's revenue.

6

## The Impact of "Tying" Plaintiff's Central Processing Units (CPUs)

Qualcomm's Baseband Processor (modem) is a mobile Semiconductor Device or chip in a smartphone, smartwatch, tablet, or other mobile device that convert digital data into radio frequency signals and manages all the radio functions.



A baseband processor allows devices to connect to wireless cellular networks. It is used in conjunction with a *Central Processing Unit or (CPU)*. Inside every cellular device is a component known as a cellular modem, which handles the actual communications with the cellular network.



Qualcomm Snapdragon Gen 8 Deep Dive CPU Display

7

"Intelligent system-level integration of the digital baseband (modem), RF transceiver, and all key RF front-end components." "The CPU *processors* utilize a strong heritage in engineering to deliver best-in-class security, AI, and connectivity solutions" *Qualcomm* https:// www.qualcomm.com/products/technology/processors#:



Snapdragon 888 Modem-RF System

The Ninth Circuit never weighed in, or issued an opinion on whether or not it is okay, or even legal for Qualcomm, or anyone, to collect royalties on another's patented inventions (i.e.,

CMDC devices; CPUs) without authorization or license to do so. Likewise, this Court has not weighed in on whether or not it is okay, or even legal for Qualcomm, or anyone to collect royalties on Plaintiff's patented inventions (i.e., CMDC devices; CPUs) without authorization or license to do so.

Below, is a summary chart that illustrates three (3) original engineering manufacturers (OEMs)—Google; Samsung, Asus/Qualcomm—allegedly infringing smartphones, that illustrates the chipsets Qualcomm "contributes" to the infringing smartphones; and the allegedly infringing CPUs "tied" to Qualcomm's modems, that are forced on the OEMs thru "no license, no chip"

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Asus / Qualcomm Smartphone for Snapdragon Insiders |
|---|---|---|
|  |  |  |
| **Chipset**: Qualcomm Snapdragon 765G | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) |
| **Modem**: Snapdragon® X52 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. |
| **CPU**: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) |
| **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11 |

## Antitrust Injury

"Qualcomm's first weapon against competitors: patent licensing terms requiring customers (i.e., OEMs) to **pay a royalty on every phone sold**... This gave Qualcomm an inherent advantage in competition with chipmakers... Qualcomm could afford to cut the price of its own chips, knowing that the customer would still be paying Qualcomm a hefty patent licensing fee on every phone." *Qualcomm's chip deals boxed out competitors*, https://arstechnica.com/tech-policy/2019/05/how-qualcomm-shook-down-the-cell-phone-industry-for-almost-20-years/

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., cell phone; smartphone).

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset (i.e., new and improved cell phone; smartphone) Qualcomm collects on, and each allegedly infringing CPU Qualcomm sells.

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model [that includes the "tied" CPU].

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips [and CPUs]. Here, Judge Koh, quoting the D.C. Circuit's decision in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in

"anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a *5% running royalty on the price of each handset sold*. These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition.  The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said all violations of the Sherman Act also violate the FTC Act.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a supply agreement, while simultaneously licensing its SEPs to them under what it called a 'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay royalties of 5% on the price of each phone sold...

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold; and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent; which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself. Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court. Qualcomm's anticompetitive practices restrained Plaintiff from entering the market to collect royalties. Plaintiff is entitled to collect damages from Qualcomm that are calculated based on lost profits Plaintiff suffered as a result of the antitrust injury.

The above-described injuries to the Plaintiff are of a type that the antitrust laws were intended to prevent; and Plaintiff's injuries flows from that which makes the Defendant's acts unlawful.

**The Anti-Competitive Impact on Qualcomm's Competitors; Plaintiff's Antitrust Injury; Intellectual Property Theft; and the Break-Down of the Entire Patent System**

If Qualcomm is allowed to collect royalties on anyone's patented inventions without authorization or legal right to do so; allowed to "tie" anyone's patented inventions to their own while forcing competitors to compete against the illegal "tie"; contributing to the infringement of its customers by contributing the Snapdragon Series of Chipsets that includes the "tying" product Qualcomm's wireless cellular modems and the "tied" product Plaintiff's patented CPUs; inducing the infringement of its customers with its "no license, no chip" policy of purchasing the "tied" and "tying" products when both can be sold separately, Qualcomm will eventually destroy the entire patent grant system.

Qualcomm was given notice by the Plaintiff and by the DOJ that its smartphones may infringe upon Plaintiff's patented CMDC devices; after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) it is alleged that Qualcomm willfully violated certain Antitrust laws i.e., tying arrangements, maintaining a monopoly, etc. Qualcomm, having knowledge of Plaintiff's inventions, willfully violated certain antitrust laws—elements of Clayton Act 4]; and, after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) Qualcomm's willfully infringed Plaintiff's patents; constitutes a complete breakdown of the Patent grant system.

Unjust enrichment stems from the theory that no one [Qualcomm] should be allowed to profit at another's [Plaintiff] expense in circumstances which suggest mistake, fraud, illegality or bad faith. Unjust enrichment claims may exist with or without a contract between the parties. The elements of Qualcomm's unjust enrichment exist because:

1. Plaintiff provided something of value to Qualcomm;

2. Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and,

3. It would be inequitable for the Qualcomm to enjoy the benefit(s) Plaintiff provided without compensating Plaintiff.

In this case, and in Plaintiff's related cases, the cases were dismissed because the Courts agreed with Defendants' that "the same patent claims have been presented and denied as "frivolous". Plaintiff believes Qualcomm, and others named in the related cases, business practices and behavior is no less than the characteristics of "pirating".

Qualcomm's violations are far worse than having a policy of not reviewing the patents of others. Qualcomm has deliberately ignored Plaintiff's patents, and as long as the Courts are complicit with Qualcomm's practices, and not demand Qualcomm to appear to defend the allegations brought against them, Qualcomm will continue to "pirate" its competitors or potential competitors, and Plaintiff until it destroys the entire patent grant system.

## Intellectual Property Thief

Qualcomm's intellectual theft occurs when Qualcomm steals or uses without permission Plaintiff's intellectual property (IP). Qualcomm's theft of intellectual property happens when Qualcomm knowingly uses, misappropriates, takes, or steals Plaintiff's property that falls under the protection of laws around intellectual property. In order to qualify as theft, Plaintiff's intellectual property is used, and royalties collected, without the consent of Plaintiff.

IP theft is an extremely expensive problem that costs businesses in the United States billions of dollars annually [antitrust violation], so the FBI has gotten more involved recently by making the investigation and prevention of this issue more of a priority. Intellectual theft is

quick, easy, and cheap to commit. All that has to happen for Qualcomm to steal Plaintiff's intellectual property is to copy Plaintiff's work, idea, or product.

It's possible for intellectual property thieves, such as Qualcomm, to financially benefit from their theft by collecting royalties on the inventions without having a license agreement or legal right to do so. This loss of profit can affect the owner [Plaintiff] of the intellectual property deeper than just a simple theft.

For any type of stolen intellectual property, the first step is generally to send a cease-and-desist letter. Plaintiff's cease-and-desist letter was the first contact with the intellectual property thief to just let them know they need to stop using and stealing Plaintiff's intellectual property.

The majority of intellectual property cases are tried as federal cases, making them federal crimes. The possible consequences of intellectual property theft are: * Criminal fines, * Imprisonment (the length of time depends on the nature of the charges), * Seizure of the stolen intellectual property, * Civil charges (could include business profits lost due to the theft), * Suspension or loss of an operating license held by a business. The laws around intellectual property protection come with stiff, costly penalties for violation.

If Qualcomm is allowed to collect royalties on Plaintiff's patented inventions without authorization or legal right to do so, then Plaintiff should likewise be allowed to collect royalties on Qualcomm's patented inventions without authorization or legal right to do so. For that matter, anyone who is currently paying Qualcomm royalties on inventions covered by Qualcomm patents should be allowed to stop, because Qualcomm has changed patent law to read; "it's okay to collect tens of billions of dollars in royalties on the inventions of someone else without being authorized to collect the royalties or having the legal right to do so".

Qualcomm should be enjoined to cease collecting royalties on CMDC devices (cell phones) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CMDC devices (handsets) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be enjoined to cease collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for contributing to the infringement of Plaintiff CMDC devices with Plaintiff's patented CPUs Qualcomm has "tied" to its Snapdragon chipset [Qualcomm threatens and force OEMs to purchase the "tied" and "tying" products together; "no license, no chip".

Note: In *Golden v. Qualcomm*, Case 4:22-cv-03283-HSG Dkts 1-5, 1-6, & 1-7 Filed 06/06/22, are supportive claim charts for direct, contributory, induced, 'doctrine of equivalents' and willful infringement. Nine (9) alleged infringing products that infringes twenty-five (25) of Plaintiff's patent claims—claim 1 of '497 patent; claim 10 of '752 patent; claims 1-9 of '189 patent; claims 13-23 of '439 patent; and claims 4-6 of '287 patent. Claims 1-20 of '619 patent not included in charts but asserted in case.

Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration", was served upon the following Defendant by priority "express" mail:

> Joseph John Stevens
> PATTERSON & SHERIDAN, LLP
> 50 West San Fernando Street, Suite 250
> San Jose, CA 95113
> Phone: (650) 384-4418
> Fax: (650) 330-2314
> Email: jstevens@pattersonsheridan.com


> Larry Golden, Pro Se
> 740 Woodruff Rd., #1102
> Greenville, South Carolina 29607
> atpg-tech@charter.net
> 864-288-5605

