# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

**FILED**

**MAY 12 2023**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

---

LARRY GOLDEN,

    Plaintiff,

V.

SAMSUNG ELECTRONICS
AMERICA, INC.

    Defendants.

CIVIL CASE NO: 3:23-cv-00048-WHO

**JURY TRIAL DEMANDED**

**(Direct Patent Infringement), (Induced
and Contributory Patent Infringement),
(Joint Patent Infringement)**

May 11, 2023

---

## PLAINTIFF'S OBJECTION AND OPPOSITION TO DEFENDANT'S
## UNRELATED FILINGS

Pursuant to Rule 403, Plaintiff objects to, and opposes Defendant's most recent

"unrelated" filings in *Golden v. Samsung Electronics America, Inc*., NDC Case 3:23-cv-00048-

WHO, Document 29, Filed 05/09/23.

This Court well understands that Rule 403 provides for the exclusion of evidence "if its

probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See, e.g., Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015).

In particular, the Ninth Circuit and this Court have repeatedly recognized that "Rule 403 is concerned with unfairly prejudicial evidence," that is, evidence that "has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented." *United States v. Shields*, 2016 U.S. App. LEXIS, at *4 (9th Cir. Dec. 21, 2016) (quoting *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991)); *see also United States v. Henrikson*, 2015 U.S. Dist. LEXIS 170829, *9- 11 (E.D. Wash. Dec. 22, 2015) (citing *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013)) ("Unfair prejudice is the undue tendency to suggest a decision on an improper basis, commonly, [] an emotional one.").

In *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023), Plaintiff's case was affirmed and dismissed for the following reason:

> "Mr. Golden has not explained in his briefing why it would not be futile for him to amend his complaint. Mr. Golden's complaint appears to suggest he believes he has broad patent claims covering general Central Processing Units (CPUs) and laptop and desktop PCs, see, e.g., S.A. 12 (¶ 10); S.A. 24–25 (¶ 43), but the claims are not for CPUs or PCs, but for ones that can perform specific functions. Mr. Golden has not argued how he could amend his complaint to identify specific Intel products that infringe his patent claims."

Plaintiff has submitted for filing "Plaintiff-Appellants Petition for Rehearing". In the petition for rehearing Plaintiff illustrates an amended complaint that includes the specific products of Intel (i.e., Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU and Intel's Loihi Neuromorphic Chip for Detecting Hazardous Chemicals) that "contributes" to the infringement of Plaintiff's patented CMDC—personal computer (PC)—device (i.e., HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC). **Exhibit A**

Also, in the petition for rehearing, Plaintiff demonstrates through an illustrative claim chart, how it would not be futile to allow Plaintiff to amend his complaint to include the "literal" "doctrine of equivalents", and "willful" infringing actions of Hewlett Packard (HP). **Exhibit A**

Thus, the Ninth Circuit has emphasized that Rule 403 requires that evidence be excluded as irrelevant where it has "scant or cumulative probative force, [which is] dragged in by the heels for the sake of its prejudicial effect." *United States v. Plascencia-Orozco*, 852 F.3d 910, 926 (9th Cir. 2017); *see* also *Wetmore v. Gardner*, 735 F. Supp. 974, 983 (E.D. Wash. 1990) (citing *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)) (same).

Specifically, the Defendant's filings should be excluded because "there is a significant danger that the [] [judge] might base its decision on emotion or when [the] non-party events would distract [a] reasonable [] [judge] from the real issues in [this] case." *United States v. Whittemore*, 2013 U.S. Dist. LEXIS 67636, at *7 (D. Nev. May 10, 2013) (citing *Tennison v. Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001), and *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)).

Sincerely,

Date: *May 11, 2023*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11ᵗʰ day of May, 2023, a true and correct copy of the foregoing "Plaintiff's Objection and Opposition to Defendant's Unrelated filings", was served upon the following Defendant by priority "express" mail:

>      Hyun Sik Byun
>      COVINGTON & BURLING LLP
>      3000 El Camino Real, 10th Floor
>      5 Palo Alto Square
>      Palo Alto, CA 94306
>      Phone: (650) 632-4707
>      Email: hbyun@cov.com

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

4

# Exhibit A

No: 2023-1257

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

LARRY GOLDEN
*Plaintiff-Appellant*

v.

INTEL CORPORATION.,
*Defendant-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA—

SAN JOSE DIVISION; IN 5:22-cv-03828-NC:

MAGISTRATE JUDGE NATHANAEL M. COUSINS

---

**PLAINTIFF-APPELLANT'S REQUEST FOR REHEARING**

LARRY GOLDEN

740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

May 10, 2023

Plaintiff-Appellant is petitioning the Circuit for rehearing in *Golden v. Intel Corporation* CAFC Case No. 23-1257, on the affirmation of the Trial Court's discretion to dismissed Plaintiff's complaint with prejudice.

Plaintiff believes he will be prejudiced if he is not allowed to amend his complaint, for the first time, to include Hewlett Packard (HP) as a Defendant.

In the complaint against Intel, the allegedly infringing PC of Hewlett Packard was named as the product that directly infringes Plaintiff's patents. Plaintiff was unaware he was expected to show an element-by-element analysis of HP's allegedly infringing PC. Plaintiff relied upon the patent claims to show Plaintiff holds the patent rights to a new, improved upon, and useful personal computer (PC).

In order to show Intel contributes its 11th Generation Intel® Xeon® W-11955M vPro® CPU and Loihi Neuromorphic Chip for Detecting Hazardous Chemicals; to the infringing PC of Hewlett Packard, Plaintiff must first amend the complaint to include the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC. (***Illustrative claim chart included***).

Amending the complaint to include the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC allows Plaintiff the opportunity to fill in the gaps the Circuit has outlined as missing in Plaintiff's original complaint, "[i]ndeed, his claim charts omit key language from the identified claims that would be essential for proving infringement, suggesting, for example that his patents cover generic PCs and CPUs, with no limitations."

## STANDARDS RELIED ON BY PLAINTIFF IS FOUND TO BE DEFICIENT FOR PLEADING PATENT INFRINGEMENT

The Federal Circuit made clear a few years ago in *Nalco Co. v. Chem-Mod, LLC*, a Plaintiff "need not 'prove its case at the pleading stage.'" The Federal Rules of Civil Procedure

do not require a Plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, the Federal Circuit previously explained in *Disc Disease Sols. Inc. v. VGH Sols., Inc.* that a Plaintiff must only give the alleged infringer fair notice of infringement.

     The Federal Circuit holds that element-by-element analysis is not a pleading requirement: "*To the extent this district court and others have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in Iqbal and Twombly.*" "A plaintiff is not required to plead infringement on an element-by-element basis." Rather, the focus of complaint sufficiency is notice — a complaint needs to provide fair notice of what activities by the defendant constitute infringement [i.e., direct, indirect, willful].

## STANDARD FOR REVIEW:
## INTEL'S PATENT INFRINGEMENT

**Direct Infringement**:

     Direct infringement occurs when a product [Plaintiff's CMDC devices of at least that of a Desktop PC, Laptop, or Tablet] is covered by Plaintiff's patent(s) is manufactured without the patent holder's [Plaintiff's] permission. Direct infringement occurs when the alleged infringer [Hewlett Packard (HP)] practices each and every element of a patent claim, either literally or through the doctrine of equivalents. See generally 35 U.S.C. § 271 (2010).

- *Literal Infringement*: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.

- *The Doctrine of Equivalents*: is a legal rule that allows a court to hold a party liable for patent infringement even if the infringing device or invention or process does not fall within the literal scope of the patent claim, but is nevertheless equivalent. The equivalent

3

element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.

**Indirect Infringement**:

When an unauthorized party [Intel] may encourage or aid another [Hewlett Packard (HP)] in infringing upon Plaintiff's patents. Indirect infringement occurs when the alleged infringer Intel does not itself practice each and every element of a claim but rather actively induces or contributes to the infringement of Hewlett Packard (HP). See 35 U.S.C. § 271(b)-(c).

- *Induced infringement*: Requires: (1) knowledge of the infringed patent; and (2) intentionally aiding and abetting a third party to infringe. 35 U.S.C. § 271(b); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344 (Fed. Cir. 2016) ("[I]nduced infringement requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" (alteration in original)); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) ("To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.'"

- *Contributory Infringement*: When an unauthorized party supplies a direct infringer with a part that has no substantial non-infringing use. Contributory infringement requires: (1) knowledge of the infringed patent; (2) providing to a third party a material component of an infringing article; and (3) that the component is especially made or adapted for use in such infringing article. 35 U.S.C. § 271(c); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." (Quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).

4

**Willful Infringement**:

Willful infringement occurred when Intel copied Plaintiff's claimed CPU invention and *__knew__* the entire time that the CPU invention was patented, thus committing patent infringement. An infringement is considered willful when: Intel engaged in acts that infringed the patent. It is when Intel purposely uses the patent holder's [Plaintiff's] ideas. This can result in the court awarding treble damages.

## PLAINTIFF'S ALLEGED "CONTRIBUTORY" PATENT INFRINGEMENT

I. Intel is allegedly liable for contributory infringement because Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU is used as a material component in the alleged infringing HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC. Contributory infringement may occur in cases when:

(1) someone (i.e., Hewlett Packard) is directly infringing;

(2) the accused contributory infringer (i.e., Intel) knew its 11th Generation Intel® Xeon® W-11955M vPro® CPU component was designed for a combination which was both patented and infringing.

(3) Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU is not a staple good and has no substantial non-infringing use; and

(4) Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU is a material part of the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC, and the combination establishes the alleged contributory infringement.

*Fujitsu Ltd. v. NETGEAR Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

5

II. Intel is allegedly liable for contributory infringement because Intel's Loihi Neuromorphic Chip for Detecting Hazardous Chemicals is used as a material component in the alleged infringing HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC. Contributory infringement may occur in cases when:

(1) someone (i.e., Hewlett Packard) is directly infringing;

(2) the accused contributory infringer (i.e., Intel) knew its Loihi Neuromorphic Chip for Detecting Hazardous Chemicals component was designed for a combination which was both patented and infringing.

(3) Intel's Loihi Neuromorphic Chip for Detecting Hazardous Chemicals is not a staple good and has no substantial non-infringing use; and

(4) Intel's Loihi Neuromorphic Chip for Detecting Hazardous Chemicals is a material part of the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC, and the combination establishes the alleged contributory infringement.

*Fujitsu Ltd. v. NETGEAR Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

The knowledge requirement can be the most slippery of these elements. The Supreme Court held that a defendant [Intel] needs to possess specific knowledge that the Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU, and the Loihi Neuromorphic Chip for Detecting Hazardous Chemicals components, which it is selling is specifically designed for the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC that infringes at least a particular identified patent. (*Aro Mfg. Co. v. Convertible Top Replacement Co.* 377 U.S. 476 (1964).)

Intel was knowledgeable of Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices, CPUs and detection systems dating back to 12/2010:

On 12/16/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Paul S. Otellini, President & CEO Intel, and Mr. Curt J. Nichols, VP Intel Capital Intel, at Mission College Blvd., Santa Clara, CA 95054-1549. Intel received and signed for the letters 12/20/2010. Phone: 408-765-8080. Tracking Nos: 7010 1870 0002 0193 0360 and 7010 1870 0002 0193 0377. (Filed in this Case 5:22-cv-03828-NC, at Dkt. 1-7; filed 06/28/22 and Dkt. 21; filed 09/27/22)

Intel was aware that the "*use*" of Plaintiff's patented CMDC devices i.e., new, improved upon, and useful, desktop PCs, laptops, tablets, cell phones, etc., without license or authorization from Plaintiff, to generate hundreds of billions of dollars in revenue, is in violation of 35 U.S. Code § 271(a):

> "Except as otherwise provided in this title, whoever without authority makes, *uses*, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Intel was aware that the "*offer to sell, or sell*" of Plaintiff's patented central processing units (CPUs), without license or authorization from Plaintiff, to generate hundreds of billions in revenue, is in violation of 35 U.S. Code § 271(a):

> "Except as otherwise provided in this title, whoever without authority makes, *uses*, *offers to sell, or sells* any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Intel was aware that whoever offers to sell, or sells "*an apparatus [i.e., central processing unit (CPU), detection component] for use in practicing Plaintiff's patented process, constituting a material part of Plaintiff's invention*", without license or authorization from the Plaintiff, to generate hundreds of billions of dollars in revenue, is in violation of 35 U.S. Code § 271(c):

7

"Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, ***knowing the same to be especially made or especially adapted for use in an infringement of such patent***, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

Intel's substantial non-infringing use factor is also important. Sellers of staple or common goods do not typically need to be concerned if their products end up in infringing items. Thus, a business selling standard bolts would probably not be liable for contributory infringement, no matter where the bolts were used.

However, with Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU and Intel's Loihi Neuromorphic Chip for Detecting Hazardous Chemicals, Intel may need to be concerned about contributory infringement liability because Intel was given notice in 2010 of Plaintiff's patented CPU's and detection systems for CMDC devices.

## PLAINTIFF'S INFORMAL APPENDIX

Plaintiff's informal appendix is a document that describes the specifications of the HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC. Plaintiff used the specifications to show an element-by-element analysis of infringement in the following illustrative claim chart.

The HP ZBook PC specifications supports Plaintiff's claim 5 of the '287 patent that the HP ZBook PC is a "monitoring device". Example: the HP ZBook PC is equipped with an Infrared camera. The IR light [camera] detects traces of explosives on surfaces of glass, paint, metal, and plastic at distances of up to several meters. https://spie.org/news/5835-detecting-traces-of-explosives?SSO=1. This is all made possible because of HP's open architecture platform and the Microsoft Windows Operating System.

8

# PLAINTIFF'S ILLUSTRATIVE AMENDED CLAIM CHART FOR PATENT INFRINGEMENT

Below, is an illustrative claim chart of how the HP ZBook PC directly infringes claim 5 of Plaintiff's '287 patent, and claim 1 of Plaintiff's '189 patent.

Also, the chart illustrates how Intel's 11th Generation Intel® Xeon® W-11955M vPro® CPU contributes to the infringement of the HP ZBook PC, and has "no substantial non-infringing use". Plaintiff's CPU is referenced in 12 limitations of claim 5 of Plaintiff's '287 patent. Every claim limitation is covered.

| HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC | Patent #: 10,163,287; Indep. Claim 5 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|
|  This "*doctrine of equivalent*" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim. | A monitoring device, comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: 11th Generation Intel® Xeon® W-11955M vPro® with Intel® UHD Graphics (2.6 GHz base frequency, up to 5.0 GHz with Intel® Turbo Boost Technology, 24 MB cache, 8 cores; 16 threads). Preinstalled operating system - Windows 11 Pro2 This "*doctrine of equivalent*" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claims. *Contributory infringement*: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one central processing unit (CPU); | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |

| | | |
|---|---|---|
| Technical Specifications Temperature Sensor— Operating is 14° to 158° F (-10° to 70° C).<br><br>*Literal Infringement*: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>*Contributory infringement*: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X |
| HP CoolSense Technology uses a motion sensor to sense when the computer is being used in a stationary or mobile setting<br><br>*Literal Infringement*: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>*Contributory infringement*: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one motion sensor in communication with the at least one CPU; | X |
| 15.6" diagonal UHD (3840 x 2160) IPS eDP1.4 + PSR2 WLED-backlit touch screen with Corning® Gorilla® Glass 5<br><br>*Literal Infringement*: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>*Contributory infringement*: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one viewing screen for monitoring in communication with the at least one CPU; | X |
| GPS: Standalone, A-GPS (MS-A, MS-B). GPS Bands: 1575.42 MHz ± 1.023 MHz, GLONASS 1596-1607MHz, Beidou 1561.098 MHz<br><br>*Literal Infringement*: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>*Contributory infringement*: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |

| | | |
|---|---|---|
| High speed internet and Microsoft account required for Windows 11 Pro and Windows 11 Pro for Business<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... |
| WLAN: Intel® Wi-Fi 6 AX201 (2x2) and Bluetooth® 5.2 wireless card, vPro™<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | X |
| HP ZBook PC Specs: HP Tamper Lock. Nano Security Lock. Windows Hello face authentication utilizes a camera specially configured for near infrared (IR) imaging to authenticate and unlock.<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | X |

11

| | | |
|---|---|---|
| HP chipset requires a Windows operating system, network hardware and software, connection with a power source, and a direct corporate network connection which is either cable or wireless LAN.<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: The CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC and is capable of carrying out the functional and operational instructions of the PC. | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X |
| HP Fingerprint Sensor.  Windows Hello face authentication utilizes a camera specially configured for near infrared (IR) imaging to authenticate and unlock.<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the HP ZBook PC<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween... |

| | | |
|---|---|---|
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the HP ZBook PC<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| Near Field Communication (NFC) module. NFC RF standards ISO/IEC 14443 A<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X |
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the HP ZBook PC<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building… or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

13

| | | |
|---|---|---|
| HP ZBook PC Specs: HP Tamper Lock. Nano Security Lock.<br><br>Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the HP ZBook PC<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| High speed internet and Microsoft account required for Windows 11 Pro and Windows 11 Pro for Business. WLAN: Intel® Wi-Fi 6 AX201 (2x2) and Bluetooth® 5.2 wireless card, vPro™<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing HP ZBook PC | X | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

**Intel contributed to the infringement of Plaintiff's patented new and improved upon PC**

| | |
|---|---|
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals. Below: Intel Labs' Nabil Imam holds a Loihi neuro-morphic chip in his Santa Clara, California, neuro-morphic computing lab. (Walden Kirsch/Intel Corp) |  |
| Intel and Cornell trained Intel's Loihi neuromorphic chip to learn and recognize the scents of 10 hazardous chemicals … the activity of 72 chemical sensors in response to these smells and configured the circuit diagram of biological olfaction on Loihi. The chip quickly learned the neural representation of each of the smells and each odor, demonstrating a future for neuroscience and AI. | <br>Intel's Loihi 2 Neuromorphic Chip |

14

# CONCLUSION

In the attached informal appendix are documents that verifies Plaintiff contact with Hewlett Packard (HP) was made as far back as 2010. Plaintiff sent the first email on 10/22/2010 to HP's business.ventures@hp.com. Plaintiff left messages with the following HP leadership: Shane Robison, Executive Vice President and Chief Strategy and Technology Officer; Prith Banerjee, Senior Vice President, Research, HP Director, HP Labs; R. Stanley Williams, Director [left message on 10/13/2010; and Dr. Peter G. Hartwell [left message on 10/13/2010].

Plaintiff informed the Trial Court in *Golden v. Intel Corporation* NDC Case 5:22-cv-03828-NC "CASE MANAGEMENT STATEMENT" Document 26 Filed 11/08/22 Page 3 of 9 Item #6 "AMENDING THE COMPLAINT…". Plaintiff's response to the question of amending the complaint was "yes", "Plaintiff plans to amend the complaint". The Trial Court was so quick to dismiss Plaintiff's complaint without allowing Plaintiff the opportunity to amend the complaint to add Hewlett Packard as a Defendant.

Plaintiff has demonstrated to the Circuit in this petition for rehearing what an amended complaint that includes Hewlett Packard looks. Although not required at the pleading stage, Plaintiff has included an element-by-element analysis of Hewlett Packard's infringement.

The focus of the amended complaint sufficiency is notice — the complaint provides fair notice of what activities by the Defendants (i.e., Intel & Hewlett Packard) constitute infringement (i.e., direct, indirect, willful).

If the Appellate Court fail to authorized the Trial Court to allow Plaintiff to amend his complaint to include Hewlett Packard, Plaintiff is left with no other option but to file a separate complaint against Hewlett Packard in the District Court.

15

Sincerely,

Date: May 10, 2023

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

16

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of May, 2023, a true and correct copy of the foregoing "Plaintiff-Appellant's Request for Rehearing", was served upon the following Defendant by priority "express" mail:

> Richard Tyler Atkinson
> McManis Faulkner
> 50 West San Fernando Street, 10th Floor
> San Jose, CA 95113
> Phone: (408) 279-8700
> Fax: (408) 279-3244
> Email: tatkinson@mcmanislaw.com

> Larry Golden, Pro Se
> 740 Woodruff Rd., #1102
> Greenville, South Carolina 29607
> atpg-tech@charter.net
> 864-288-5605

17