# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

```
FILED

Jun 13 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO
```

| | |
|---|---|
| LARRY GOLDEN,<br><br>    Plaintiff,<br><br>V.<br><br>SAMSUNG ELECTRONICS<br>AMERICA, INC.<br><br>    Defendants. | CIVIL CASE NO: 3:23-cv-00048-WHO<br><br>**JURY TRIAL DEMANDED**<br><br>**(Direct Patent Infringement), (Induced<br>and Contributory Patent Infringement),<br>(Joint Patent Infringement)**<br><br>June 12, 2023 |

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff is asking this Court to reconsider its Order Granting Defendant's Motion to Dismiss, Dkt. 36, filed 06/08/2023, and reinstating all of Plaintiff's pending motions.

Under the doctrine of *res judicata*, or claim preclusion, all four (4) elements of the doctrine must be meet before dismissing a case. Throughout this "motion for reconsideration" document, Plaintiff quotes supporting authorities and precedence on *res judicata* that suggest the Court erred in dismissing this case.

As the Supreme Court explained more than 50 years ago in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), *res judicata* does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of the earlier conditions.

"*Res judicata*" is a phrase covering two forms of preclusion. *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 n.1 (6th Cir. 1987). Typically, and as used in this case, it means claim preclusion: A final judgment on the merits precludes parties from relitigating a claim that was or could have been raised in that action.

The phrase is also used to describe issue preclusion (also known as collateral estoppel), which bars relitigating of a particular issue that has already been decided in an action between the parties. The Trial Court is quoted as saying:

> "Even if preclusion did not apply – and it does – this case must be dismissed for failure to plausibly allege infringement. Golden asserts that his "Multi Sensor Detection, Stall to Stop and Lock Disabling System" patents were infringed by: (i) "CPU's Samsung uses with its Smartphones"; (ii) Samsung's use of Global Position System (GPS) and web browsers; (iii) Samsung's use of camera lenses; (iv) Samsung's use of biometric data to unlock phones; and (v) Samsung's use of remote unlocking technology. See generally Complaint ¶ 61 & pgs. 19-26; see also id. pgs. 27-31. The allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face."

The issue of unsupported "written patent description" has already been raised in the CFC Case No. 13-307C, *Larry Golden v. The United States*; and, in the *Department of Homeland Security v. Larry Golden* Case No. IPR2014-00714:

> "In the Decision to Institute, we construed certain claim terms. Those constructions are reproduced in the chart below. Claim Term Construction "built in, embedded" (claim 74) "something is included within, incorporated into, disposed within,

2

affixed to, connected to, or mounted to another device, such that it is an integral part of the device" "communication device" (claim 81) "monitoring equipment" Dec. to Inst. 11–16."

"No party challenges these constructions. Both of these terms were modified or removed in the amendment. To the extent that any of these constructions remain relevant after the amendment, we see no reason to modify them."

"We further determined that no explicit construction was necessary for any other claim terms. Dec. to Inst. 10–11. Based on the record adduced during trial, we see no need to construe any other terms."

According to 35 U.S. Code § 101 - Inventions patentable: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

Plaintiff invented a communicating, monitoring, detecting, and controlling (CMDC) device that is a new, improve upon, and/or useful cell phone.

Every element the NDC Court described as being "the identified functionalities included in Samsung's products", are illustrated below in Plaintiff's independent claim 23 of Plaintiff's '439 patent. Plaintiff's new, improve upon, and/or useful cell phone has a priority disclosure date at the USPTO of November 17, 2004:

A cell phone comprising:

a *central processing unit (CPU)* for executing and carrying out the instructions of a computer program;

a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device;

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency

(RF) connection, or *GPS connection*;

the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and

whereupon the cell phone is interconnected to the cell phone detection device to *receive signals or send signals to lock or unlock doors*, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device;

at least one of *a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor* capable of being *disposed within, on, upon or adjacent the cell phone*;

wherein at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection is capable of signal communication with the transmitter or the receiver;

wherein the cell phone is equipped with a *biometric lock disabler that incorporates at least one of a fingerprint recognition*, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and

whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone.

Plaintiff's patented CMDC devices; CPUs for Plaintiff's CMDC (smartphone) devices; camera lenses for CBRNE detection; fingerprint and facial biometric authentication for unlocking the CMDC devices; and Plaintiff's remote locking and unlocking technology, has already been examined and allowed at the United States Patent and Trademark Office (USPTO).

Plaintiff's claimed inventions were issued with the "presumption of validity" by the USPTO; challenged by the Defendant ("Government") in *Larry Golden v. The United States* CFC Case No. 13-307C; and again, challenged in the IPR trial in the *Department of Homeland Security v. Larry Golden* Case No. IPR2014-00714.

Therefore, any challenges to the written description of Plaintiff's inventions, or claim construction of any terms raised, or could have been raised, is now "collateral estoppel". A challenge now constitutes "*a worsening of the earlier conditions*" and harassment to Plaintiff.

## A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

This Court is quoted as saying, "[t]he allegations that his patents cover the identified functionalities included in Samsung's products are wholly [] implausible on their face."

As indicated in the above section, Plaintiff's complaint contains "sufficient factual matter, [that when] accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff's claim has "facial plausibility" because Plaintiff pled "enough factual content that would allow the Court to draw the reasonable inference that the Defendant [Samsung] is liable for the misconduct alleged."

The Supreme Court has specifically indicated that determining whether a complaint states a plausible claim for relief under this standard is "a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*. at 679.

The Second Circuit has decided that it is not the District Court's task in reviewing a motion to dismiss to decide between two plausible inferences that may be drawn from the factual

allegations in the complaint: "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), cert. denied, 133 S. Ct. 846 (2013).

Thus, "[t]he question at the pleading stage is not whether there is a plausible alternative to the Plaintiff's theory [the Court's alternative is the functionalities included in Samsung's products are the inventions of Samsung]; the question is whether there are sufficient factual allegations to make the complaint's claim plausible." *Id.* at 189.

Even after *Twombly* and *Iqbal*, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', even if their truth seems doubtful." *Id.* at 185 (quoting *Twombly*, 550 U.S. at 556).

Because the plaintiff is entitled to the benefit of the doubt, "it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives"; rather, "the choice between or among plausible interpretations of the evidence will be a task for the factfinder," assuming that the plaintiff "can present sufficient evidence to support its factual allegations." [1] *Id.* at 190

---

[1]    Plaintiff has presented this Court with enough sufficient evidence to support Plaintiff's alleged literal infringement; infringement under the doctrine of equivalents; induced infringement; contributory infringement; and willful infringement as a result of Samsung's willful blindness. Willful Blindness basically means notice is not required for willful patent infringement.

.

**Relitigating a claim that was or could have been raised in the CFC case.**

The district court concluded, Plaintiff's complaint against Samsung is barred by *res judicata* because it raises the same claims that were previously dismissed by the Court of Federal Claims (CFC) under the Tucker Act's jurisdictional statute. *See Havens v. Mabus*, 892 F. Supp. 2d 303, 310-14 (D.D.C. 2012). "Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (quotation marks omitted).

Under the doctrine of *res judicata*, or claim preclusion, all four (4) elements of the doctrine must be meet before dismissing the case. Throughout this "request for reconsideration" document, Plaintiff quotes supporting authorities and precedence on *res judicata* that suggest the Court erred in dismissing this case.

This Court must conclude that *res judicata* does not bar Plaintiff's suit because the CFC dismissal does not constitute a final, valid judgment on the merits, of the same claims or same cause of action, by a court of competent jurisdiction.

The Federal Circuit have previously held that "dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit in a court of competent jurisdiction." *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999); *see* also *Prakash v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) ("A dismissal for lack of subject-matter jurisdiction . . . is not a disposition on the merits and consequently does not have *res judicata* effect."

## THE NEW COMPLAINT RAISES CLAIMS THAT COULD NOT HAVE BEEN RAISED IN THE PRIOR LITIGATION

In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), "the Supreme Court unanimously reversed the application of *res judicata* where the lower court applied the same reasoning as the district court applied []. There, the plaintiffs brought an antitrust suit that was ultimately dismissed with prejudice. *Id.* at 324. Seven years later, the plaintiffs brought a second antitrust suit against many of the same defendants, alleging the same course of wrongful conduct, which had worsened in the interim. *Id.* at 328. The lower courts applied *res judicata* to bar the second suit. *Id.*"

The Supreme Court reversed, explaining that even though "both suits involved essentially the same course of wrongful conduct," *res judicata* did not apply. *Id.* at 327 (internal quotation marks omitted). The Court noted that "such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." *Id.* at 327–28.

## The Government, and third-party contractor Samsung, cannot be held liable for inducing or contributing to the infringement of Plaintiff's patents in the U.S. Court of Federal Claims.

On September 17, 2015, the Federal Circuit affirmed the dismissal under 28 U.S.C. § 1498(a) of a patentee's claims for indirect patent infringement against government contractors where the only alleged directed infringement was the Government's purported use of the patented invention. *Astornet Technologies Inc. v. BAE Systems, Inc.*, No. 14-1854 (Fed. Cir. Sept. 17, 2015). The case continued a recent trend of Federal Circuit decisions, including *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359 (Fed. Cir. 2014) and *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012), holding that § 1498 affords government contractors a wide scope of protection against liability for infringement. *Astornet* makes clear that, in addition to relieving

8

contractors from a broad range of liability for acts of direct patent infringement, § 1498(a) also prevents government contractors from being held liable for inducing or contributing to the government's infringement of a patent.

**The Government, and third-party contractor Samsung, cannot be held liable for willful blindness or willful patent infringement of Plaintiff's patents in the U.S. Court of Federal Claims.**

The doctrine of willful blindness applies when [Samsung] seeks to avoid civil liability for the wrongful acts by intentionally keeping itself unaware of facts that would render them liable or implicated. Willful Blindness basically means notice is not required for willful patent infringement.

In 2011, in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) the U.S. Supreme Court ruled that actual knowledge of a patent is not required for inducement to infringe. Willful blindness provided the inducement.

In 2015, in *Suprema v. ITC* (Investigation No. 337-TA-720), the Federal Circuit held that willful blindness is established by (1) a subjective belief of a high probability that a fact exists and (2) deliberate action to avoid learning that fact.

The District Court in this case, and in the other cases Plaintiff has filed in the Northern District of California, is fully aware of the fact; all that's needed to legitimately terminate this case is for Samsung to present to this Court, their patent(s) that covers the products Plaintiff alleges Samsung are infringing.

If Samsung had presented their patents in 2008 for their new, improved upon, and useful cell phone (i.e., smartphone), Samsung would not have to depend on trickery to win this case. This Court erred in not ordering Samsung to produce the patents.

**The Government, and third-party contractor Samsung, are not subject to an injunction and cannot be held liable for punitive damages in the U.S. Court of Federal Claims.**

Injunctive relief is not available as a primary remedy in the Court of Federal Claims. The prospect of government contractors being subject to an injunction would disrupt the government's ability to procure its needed supplies and services *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 343 (1928) However, the term "entire" in § 1498(a) bars any option for a patent owner to obtain punitive damages against the government *Motorola, Inc. v. United States*, 729 F.2d 765, 768 n.3 (Fed. Cir. 1984).

## *KESSLER DOCTRINE*

Samsung's interpretation and application of the Kessler Doctrine in this case is completely flawed. First, Samsung cannot apply the doctrine as a manufacturer because in the Claims Court case no. 13-307C Samsung could not be held liable for direct, induce, or contributory infringement, in *Astornet Technologies Inc. v. BAE Systems, Inc.*, No. 14-1854 (Fed. Cir. Sept. 17, 2015) "[t]he case continued a recent trend of Federal Circuit decisions, including *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359 (Fed. Cir. 2014) and *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012), holding that § 1498 affords government contractors a wide scope of protection against liability for infringement. *Astornet* makes clear that, in addition to relieving contractors from a broad range of liability for acts of direct patent infringement, § 1498(a) also prevents government contractors from being held liable for inducing or contributing to the government's infringement of a patent.

Second, according to the United States ("Government") in the Claims Court case no. 13-307C, the United States ("Government") was never a customer; never "used" the consumer

devices; the consumer devices was never "manufactured for, or by" the Government; and was never manufactured for the benefit of the Government. As a result of this stance, the Claims Court dismissed sixty-one (61) of Plaintiff's seventy-two (72) alleged infringement claims. The Claims Court *ORDER*: Case 1:13-cv-00307-EGB Document 130 Filed 03/29/18:

> "Regarding the "first requirement," private conduct incidentally benefitting the Government does not constitute use "for the benefit of the Government." 10/20/17 Gov't Mot. at 7 (citing *Sheridan v. United States*, 120 Fed. CL 127, 131 (Fed. CL 2015) ("Where benefits to the Government are merely an incidental effect of private conduct, they do not constitute 'use or manufacture for the Government within the meaning of § 1498.")) …"

> "The Government also argues that the [] Complaint's "allegations relating generally to smartphones and other consumer devices should be dismissed" under RCFC 12(b)(1) and 12(b)(6), because they fail to allege "actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible." 10/20/17 Gov't Mot. at 16-17."

> "In addition, the [] Complaint "fails to allege that any of these various consumer devices were made for the benefit of the [G]overnment." 10/20/17 Gov't Mot. at 17. The companies referenced in the [] Complaint "manufacture, develop, and commercialize their devices in their own economic self-interest." 10/20/17 Gov't Mot. at 17. Moreover, any benefit that the Government might receive does "not constitute use or manufacture for the Government within the meaning of § 1498."

> "The Government also argues that the [] Complaint's "allegations relating generally to smartphones and other consumer devices should be dismissed" under RCFC 12(b)(1) and 12(b)(6), because they fail to allege "actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible." 10/20/17 Gov't Mot. at 16-17."

> "The [] Complaint, however, does not allege that the Government's intent to "allow" or "approve" the use of "smartphones and other consumer devices" infringes Plaintiffs patents. Instead, the [] Complaint alleges that the Government's use of these devices in combination with other "devices" or "programs," e.g., the "Cell-All initiative,"

infringes Plaintiffs patents. 8/10/17 Am. Compl. ¶¶ 96-97. No factual allegations, however, support assuming that the Government used or authorized the use of these other "devices" or "programs" to infringe Plaintiffs patents."

For example, although the [] Complaint alleges that the "LG Electronics GS Smartphone . . . can be used" by the Government, such an allegation does not support the conclusion that the Government used or authorized the use of these devices to run the "Cell-All' initiative." 8/10117 Am. Compl. ¶¶ 96-97. Nor do such allegations imply that the Government's use of the "LG Electronics GS Smartphone" infringes Plaintiffs patents…"

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 184-85, 199-200, 235-36, 260-61, 265-66, 270-71, 275-76, 280-81, 285-86, 290-91, 295-96, 300-01, 305-06, and 350-51 of the August 10, 2017 [] *Complaint failed to satisfy Plaintiffs burden to establish jurisdiction under 28 U.S.C. § 1498(a)*. Accordingly, these paragraphs of the Complaint must be dismissed…"

Therefore, the Kessler Doctrine does not apply in this case because it was the Claims Court's that ordered Plaintiff to litigate against Samsung as a "private entity" while under the protection of the Government.

According to the Claims Court and the Government, Samsung was never a customer, and did not appear in the Case to represent itself as a customer. Also, according to the Claims Court and the Government, Plaintiff never established jurisdiction for the Samsung smartphones under 28 U.S.C. § 1498.

Samsung may argue that the Claims Court later reversed the order. That argument is not a valid one because the Claims Court never reverse the sixty-one (61) alleged infringement claims the Claims Court dismissed.

Later, in the Claims Court *OPINION*: Case 1:13-cv-00307-EGB Document 249 Filed 11/10/21, the Court doubled down on its position: "[U]nexplained is how they relate either to the

products ostensibly accused by the complaint or the overarching mystery present in all of plaintiff's pleadings—how the government is on the hook for the 'private parties' products.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical— these are all words that can be used to describe a frivolous lawsuit.

## *FRIVOLOUSNESS*

Every time, and in every court, the Judge improperly dismisses Plaintiff's patents as "frivolous", the Judge improperly expands the scope of the Defendants' patents—used to restrain trade beyond enforcing the exclusive rights that a lawfully obtained patent provides and expands the scope of the patent beyond its boundaries. Plaintiff refers to the dismissals as a dismissal of his patents, instead of cases, because the patents are at the core of all Plaintiff's pleadings.

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). Proving anti-competitive practices, "tying", and unjust enrichment in court requires Plaintiff to prove two broad elements: ownership and validity of the patented inventions, and the "use" or "misuse" of the patented inventions by the defendant(s).

The Trial Court erred in dismissing this current case for "frivolousness" because valid patents have a place in law and in fact. 35 U.S. Code § 282(a) states In General. "A patent shall be presumed valid. Each claim of a patent (… independent, dependent, or multiple dependent …) shall be presumed valid independently of the validity of other claims". In the District Courts, invalidity must be proven on the heightened standard of "clear and convincing evidence".

Each time a Judge prematurely dismisses Plaintiff's patents; without reviewing the Defendant's invalidity contentions; and without a Marksman Hearing/claim construction, the

13

Judge involves himself/herself in a conspiracy against rights: 18 U.S.C. § 241: "Section 241 makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the Unites States or because of his or her having exercised such a right." Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act. *Department of Justice* https://www.justice.gov/crt/statutes-enforced-criminal-section#:

The Northern District of California Judges has improperly dismissed Plaintiff's [patents] cases against Samsung, Apple, Intel, and Qualcomm as "frivolous", while overlooking and allowing for the Defendants' "misuse" of their patents.

Samsung collects hundreds of billions of dollars annually in revenues but refuses to pay taxes here in the United States. Apple's "misuse" involves the use of its first *design* patent (2007) as the first *utility* patent for the smartphone. Intel continues to claim the right to exclude others and collects royalties on old, outdated, and expired patents. Qualcomm forces its customers to pay royalties on unpatented products, or products that are patented by the Plaintiff.

The one time the Federal Circuit in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267 issued a decision that Plaintiff's complaint and claim charts are not "facially frivolous" because "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189" … "Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart" [vacated and remanded];

The Northern District of California Judges in Samsung, Apple, Intel, and Qualcomm blatantly disrespected the opinion of the Federal Circuit that Plaintiff's [patents] are not "facially frivolous", and reverted back to improperly dismissing Plaintiff's patents as "frivolous";

14

meaning the patents "lacks any arguable basis either in law or in fact" *Neitze v. Williams*, 490
U.S. 319, 325 (1989). **Exhibit A** illustrates how the decision in *Golden v.. Google LLC* is
relevant to the "Samsung products grouped together by common features of design similarities".
It is a claim chart of an alleged Samsung smartphone and Tablet / PC.

Sincerely,

Date: *June 11, 2023*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of June, 2023, a true and correct copy of the foregoing "Plaintiff's Motion for Reconsideration", was served upon the following Defendant by priority "express" mail:

Hyun Sik Byun

COVINGTON & BURLING LLP

3000 El Camino Real, 10th Floor

5 Palo Alto Square

Palo Alto, CA 94306

Phone: (650) 632-4707

Email: hbyun@cov.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

# Exhibit A

## SMARTPHONE COMPARISON BETWEEN THE GOOGLE PIXEL 5 AND THE SAMSUNG GALAXY S21

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process".

The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

> Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

1

**CLAIM CHART FOR THE SMARTPHONE COMPARISON BETWEEN THE GOOGLE PIXEL 5 AND THE SAMSUNG GALAXY S21. THE GOOGLE PIXEL 5 SPECIFICATIONS AND THE PATENT CLAIMS' LIMITATIONS FOR THE '287, '439, & '189 PATENTS ARE THE SAME AS IN *LARRY GOLDEN v. GOOGLE LLC*; CAFC CASE NO. 22-1267**

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|---|
|  |  | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | CPU: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) - USA/China. Chipset: Qualcomm SM8350 Snapdragon 888 5G (5 nm). OS: Google Android 11, upgradable to Android 13 Modem: Snapdragon® X60 5G Modem-RF System. | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |

| | | | | |
|---|---|---|---|---|
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. Monitoring air temperatures. | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X |
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | at least one motion sensor in communication with the at least one CPU; | X | X |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.2 inches flexible OLED display at 421 ppi | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X |

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a… Bluetooth connection, WiFi connection, internet connection… cellular connection… short range radio frequency (RF) connection, or GPS connection; | X |

| | | | | |
|---|---|---|---|---|
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X |
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | Samsung USB-C Cable lets you charge your USB-C device as well as sync your data to your smartphone | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X |

5

| | | | | |
|---|---|---|---|---|
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween... |

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X |

| | | | | |
|---|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |

8

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

## PLAINTIFF'S ILLUSTRATIVE SUPPLEMENTAL CLAIM CHART FOR PATENT INFRINGEMENT

Below, is an illustrative claim chart of how the Samsung Galaxy Book2 Pro 360 PC / Tablet directly infringes claim 5 of Plaintiff's '287 patent, and claim 1 of Plaintiff's '189 patent.

Also, the chart illustrates how Intel® Core™ i5-1235 / Intel® Core™ i7-1255U CPU contributes to the infringement of the Samsung Galaxy Book2 Pro 360 PC / Tablet, and has "no substantial non-infringing use". Plaintiff's CPU is referenced in 12 limitations of claim 5 of Plaintiff's '287 patent. Every claim limitation is covered.

| Samsung Galaxy Book2 Pro 360 [PC Mode or Tablet Mode] | Patent #: 10,163,287; Indep. Claim 5 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|
|    This "*doctrine of equivalent*" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim. | A monitoring device, comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Intel® Core™ i5-1235U / Intel® Core™ i7-1255U. Processor Speed 1.3GHz / 1.7 GHz. Clock 900 - 4400 MHz / 1200 - 4700 MHz. L1 Cache 928 KB / 928 KB. Cores 10 / 10. Threads 12 / 12. Preinstalled Operating System Windows 11 Home   This "*doctrine of equivalent*" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claims.   ***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one central processing unit (CPU); | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |

| | | |
|---|---|---|
| Technical Specifications: CPU Temperature Sensor reached 99° C. Surface temperature: W,A,S,D Keys - 42.1 °C, Keyboard Middle - 44.1 °C, Palm Rest - 37.0 °C<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X |
| With the infrared sensor the device can detect motion by measuring the infrared (IR) light radiating from objects in its field of view<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one motion sensor in communication with the at least one CPU; | X |
| Available in two screen sizes (13.3" and 15.6"). Plus, the screen automatically adapts to any lighting environment, so it's easy on the eyes, thanks to a 1MM:1 contrast ratio<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one viewing screen for monitoring in communication with the at least one CPU; | X |
| GPS: If you turn on satellite-based GPS, your tablet can find your exact position. Microsoft Windows 11 has added a location services feature that uses IP addresses and Wi-Fi positioning to predict your location.<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |

| | | |
|---|---|---|
| High speed internet and Microsoft account required for Windows 11 Home and Windows 11 Pro. Networking: 802.11ax (Wi-Fi 6E), Bluetooth Standard: Bluetooth 5.0<br><br>**Literal Infringement**: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>**Contributory infringement**: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... |
| Networking: Bluetooth Standard: Bluetooth 5.0. 802.11ax (Wi-Fi 6E),<br><br>**Literal Infringement**: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>**Contributory infringement**: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | X |
| Galaxy Book2 Pro 360 Specs: The Galaxy Book2 Pro keyboard has an NFC connection spot. Tapped the Galaxy phone on the spot to make contact; then used the Samsung Flow phone software to lock and unlock the tablet using the phone's fingerprint scanner.<br><br>Windows Hello face authentication utilizes a camera specially configured for near infrared (IR) imaging to authenticate and unlock.<br><br>**Literal Infringement**: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>**Contributory infringement**: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | X |

12

| | | |
|---|---|---|
| Samsung's Super-Fast Charging-enabled 65W AC adapter in the box. It can deliver "8 hours" of battery life in just 30 minutes of charging. The Galaxy Book2 Pro 360 averaged around 10 hours 30 minutes on a full charge.<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: The CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 and is capable of carrying out the functional and operational instructions of the PC. | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X |
| Samsung's Biometric Sensors. Fingerprint Reader. Windows Hello face authentication utilizes a camera specially configured for near infrared (IR) imaging to authenticate and unlock.<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the Galaxy Book2 Pro 360<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) Notice to Appear sent to Samsung in *Golden v. USA* Case 13-307C | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… |

| | | |
|---|---|---|
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the Galaxy Book2 Pro 360<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) Notice to Appear sent to Samsung in *Golden v. USA* Case 13-307C | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| The Galaxy Book2 Pro keyboard has a Near Field Communications (NFC) connection spot. Briefly tapped the Galaxy phone on the spot to make contact<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X |
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the Galaxy Book2 Pro 360<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360<br><br>***Induced infringement***: requires not 'only knowledge of the patent' but also 'proof the defendant knew the [induced] acts were infringing.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). Notice to Appear sent to Samsung in *Golden v. USA* Case 13-307C | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building… or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

14

| | | |
|---|---|---|
| The Galaxy Book2 Pro keyboard has a Near Field Communications (NFC) connection spot. Briefly tapped the Galaxy phone on the spot to make contact; then used the Samsung Flow phone software to lock and unlock the Galaxy Book2 Pro tablet using the phone's fingerprint scanner from across the room.<br><br>Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals compatible with the Galaxy Book2 Pro 360<br><br>This "***doctrine of equivalent***" element performs substantially the same function; in substantially the same way; and, produces substantially the same result, as the element as expressed in the claim.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| High speed internet and Microsoft account required for Windows 11 Home and Windows 11 Pro. Networking: 802.11ax (Wi-Fi 6E), Bluetooth Standard: Bluetooth 5.0<br><br>***Literal Infringement***: When there is a direct correspondence between the words in the patent claims and the infringing product or device or technology.<br><br>***Contributory infringement***: This CPU element, provided by Intel, is a material component of the allegedly infringing Galaxy Book2 Pro 360 | X | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

## Intel contributed to the infringement of Plaintiff's patented new and improved upon PC

| | |
|---|---|
| Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals. Below: Intel Labs' Nabil Imam holds a Loihi neuro-morphic chip in his Santa Clara, California, neuro-morphic computing lab. (Walden Kirsch/Intel Corp) |  |
| Intel and Cornell trained Intel's Loihi neuromorphic chip to learn and recognize the scents of 10 hazardous chemicals … the activity of 72 chemical sensors in response to these smells and configured the circuit diagram of biological olfaction on Loihi. The chip quickly learned the neural representation of each of the smells and each odor. | <br>Intel's Loihi 2 Neuromorphic Chip |